**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | 3:23-CR-00026 (KAD) |
| GLENN OZTEMEL and | : | |
| EDUARDO INENECCO | : | |
| | : | |

**GLENN OZTEMEL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION  FOR AN ORDER DIRECTING THE GOVERNMENT**
**TO PRODUCE ALL *BRADY* AND *GIGLIO* MATERIAL**
**[Filed under Seal]**

Nelson A. Boxer
David Hoffman
Chanel Thomas
PETRILLO KLEIN & BOXER LLP
655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0338
nboxer@pkbllp.com

Paul McConnell
638 Prospect Avenue
Hartford, Connecticut 06105
Phone: (860) 266-1166
paul@mcconnellfamilylaw.com

June 21, 2023

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.    The Government Continues to Misstate the *Brady* Standard. ........................................ 2

    II.   The Government Belatedly Produced Significant *Brady* and *Giglio* Material. ............... 5

    III.  The Government Likely Possesses Further *Brady* and *Giglio* Material.......................... 6

CONCLUSION ................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Kyles v. Whitley*,
   514 U.S. 419 (1995)................................................................................. 7

*Ostrer v. United States*,
   577 F.2d 782 (2d Cir. 1978)............................................................ 2, 3, 5

*United States v. Agurs*,
   427 U.S. 97 (1976)............................................................................... 3

*United States v. Bundy*,
   968 F.3d 1019 (9th Cir. 2020) ............................................................. 4

*United States v. Coppa*,
   267 F.3d 132 (2d Cir. 2001)............................................................. 3, 4

*United States v. Hunter*,
   32 F.4th 22 (2d Cir. 2022) ................................................................. 4

*United States v. Stillwell*,
   986 F.3d 196 (2d Cir. 2021)................................................................ 3

*United States v. Triumph Cap. Grp., Inc.*,
   544 F.3d 149 (2d Cir. 2008)................................................................ 7

*United States v. Vozzella*,
   124 F.3d 389 (2d Cir. 1997)................................................................ 4

*Wearry v. Cain*,
   136 S. Ct. 1002 (2016)..................................................................... 4, 5

**Rules**

Standing Order .................................................................................... *passim*

## INTRODUCTION

The government's recent production, delivered after the defense questioned the government's *Brady* compliance and moved to compel production of *Brady*/*Giglio* material, included significant *Brady/Giglio* material, which should have been produced fourteen days after arraignment (*i.e.*, March 13, 2023).  Stnd. Ord. § (A)(1)(j), (k).[1]  Moreover, Mr. Oztemel's motion has not been mooted by that production because the government continues to cite an incorrect, underinclusive standard for what constitutes *Brady/Giglio* material.  *See* ECF No. 54 at 4 (government need only produce evidence that is "so clearly exculpatory or valuable for impeachment purposes that any reasonable prosecutor will immediately recognize its utility to the defense") (citation omitted).  Taken together, these failures suggest that the government likely possess additional *Brady/Giglio* material.  Ultimately, the government's only argument for why it has complied with its *Brady/Giglio* obligations is that it has produced a large volume of discovery.  *See* ECF No. 54 at 3 ("To date, the government has produced over 1.6 million pages of records. . .").  But quantity is no substitute for quality under *Brady*.  The Court should order the government to comply with its *Brady*/*Giglio* obligations—under controlling standards—to protect Mr. Oztemel's constitutional rights.

## BACKGROUND

On June 6, 2023, Mr. Oztemel filed this motion for an Order compelling the government to produce *Brady/Giglio* materials.  *See* ECF 48.  On June 8, 2023, the government sent the defense a discovery letter and mailed its fifth volume of discovery.  *See* ECF 54-3 ("Volume Five").  The documents produced included:  (1) twenty-one untranslated "[r]ecords related to R. Berkowitz" in Portuguese; (2) twelve FBI witness interviews ("302s"); and (3) an application for

---

[1] All terms not otherwise defined herein are given the meanings ascribed to them in the Indictment and Mr. Oztemel's opening brief.  *See* ECF No. 1, 48.

pen registers and trap and trace devices for WhatsApp accounts belonging to Mr. Innecco.  *See* ECF 54-3; Boxer Reply Decl. ¶ 4.  On June 14, 2023, the government filed its opposition to Mr. Oztemel's motion, in which it again claimed that a phrase the Second Circuit used in a 1978 case to describe one example of *Brady* material is the governing standard for assessing all *Brady* material, and asked the Court to "deny the Motion as moot."  ECF 54 at 1; *see also* ECF No. 47-2 at 3 (March 8, 2023, government letter using the "so clearly exculpatory" standard); ECF No. 47-5 at (May 26, 2023, government letter using the "so clearly exculpatory" standard).[2]

## ARGUMENT

Mr. Oztemel's motion is not moot.  The government's continued citation to an incorrect, narrow standard and late production of *Brady/Giglio* materials demonstrate that it does not understand its obligations.

### I.    The Government Continues to Misstate the *Brady* Standard.

The government still misstates the threshold for disclosure under *Brady*.  According to the government, it must only "produce evidence that is 'so clearly exculpatory or valuable for impeachment purposes that any reasonable prosecutor will immediately recognize its utility to the defense.'"  ECF No. 54 at 4 (quoting *Ostrer v. United States*, 577 F.2d 782, 785 (2d Cir. 1978)).  *Ostrer* is the only citation for this standard the government provides.  For four primary reasons, this citation is flawed.

**First**, in *Ostrer*, the Second Circuit did not adopt a "so clearly exculpatory" standard. 577 F.2d at 785.  Rather, the Second Circuit stated that the first Supreme Court decisions after *Brady* "left open the question of what standards were to be applied in determining whether evidence would be deemed 'material' for *Brady* purposes."  *Id.*  The Second Circuit continued,

---

[2] Mr. Oztemel's opening brief contains a more detailed description of the Indictment and the procedural history in this case.  *See* ECF No. 48 at 1-8.

"[i]n most cases the issue can be resolved without difficulty.  Certain proof is so clearly exculpatory or valuable for impeachment purposes that any reasonable prosecutor will immediately recognize its utility to the defense."  *Id.*  The Second Circuit did not, however, suggest that this is the only instance when prosecutors have *Brady* obligations.  Rather, the court explained that *United States v. Agurs*, 427 U.S. 97 (1976), supplied the test for materiality (at that time, *in 1978*).  *Id.*  Under *Agurs*, where (1) a defendant made a specific request for exculpatory information; or (2) the prosecution knew (or should have known) its case included perjury—evidence was material "if there is any reasonable likelihood that the evidence could have affected the outcome of the trial."  *Id.* (citing *Agurs*, 427 U.S. at 103-04.  But if a defendant (3) made only general requests for exculpatory information, evidence was material if the "undisclosed evidence, viewed in the context of the entire record, creates a reasonable doubt that otherwise would not exist."  *Id.* (citing *Agurs*, 427 U.S. at 112-13).

The Supreme Court subsequently abrogated the distinction between the three scenarios described in *Agurs*—creating a single "reasonable likelihood" standard.  *See United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) ("[N]ine years after *Agurs*, the Court in *Bagley* disavowed any difference among the three situations and held that, regardless of a defendant's request, the government violates its duties under *Brady* if it suppresses evidence that, if disclosed, would have had a reasonable probability of changing the outcome of the proceedings.") (citing *United States v. Bagley*, 473 U.S. 667, 681-82 (1985)).

Thus, *Ostrer* did not—as now three times professed by the government—adopt a "so clearly exculpatory" standard for *Brady* material, as evidenced by the *Ostrer* decision itself, 577 F.2d at 785, as well as by Second Circuit decisions subsequent to *Ostrer*, *see*, *e.g.*, *United States v. Stillwell*, 986 F.3d 196, 200 (2d Cir. 2021) (evidence is "material" under *Brady/Giglio* "if

3

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (quotations omitted).  The government is misciting an outdated a case.

      **Second**, since the Second Circuit decided *Ostrer* in 1978, no court has ever cited/quoted *Ostrer* for the government's "so clearly exculpatory" standard.  According to Westlaw, thirty-eight cases cite *Ostrer*; none of those cases contains the phrase "so clearly exculpatory."  Rather, to the extent that courts cite *Ostrer*, they cite *Ostrer*'s discussion of the "any reasonable likelihood" standard.  *See, e.g.*, *United States v. Vozzella*, 124 F.3d 389, 392 (2d Cir. 1997) (evidence is material "if there is any reasonable likelihood that the evidence could have affected the outcome of the trial") (quoting *Ostrer*, 577 F.2d at 786).

      **Third**, the government fails to engage with the (more current) controlling cases articulating a lower standard for disclosure under *Brady/Giglio* than the government's "so clearly exculpatory" standard.  *See, e.g.*, *Wearry v. Cain*, 577 U.S. 385, 392 (2016) (*per curiam*) ("Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury.") (quotations omitted); *Coppa*, 267 F.3d at 142  ("[T]he prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different.").

      And **fourth**, the government fails to recognize that the threshold for *Brady/Giglio* tilts in favor of disclosure before trial.  *See United States v. Hunter*, 32 F.4th 22, 35 (2d Cir. 2022) ("onus" is on the government to determine when a "reasonable probability is reached" pre-trial and the government should "resolve doubtful questions in favor of disclosure"); *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020)  ("The retrospective definition of materiality is appropriate only in the context of appellate review; thus, trial prosecutors must disclose

4

favorable information without attempting to predict whether its disclosure might affect the outcome of the trial.") (quotations omitted).

Simply put, the government's out-of-context quote from *Ostrer* is not the governing standard for production of material in accordance with *Brady*.

**II.    The Government Belatedly Produced Significant *Brady* and *Giglio* Material.**

The 302s produced by the government in Volume Five contain *Brady/Giglio* material that should have been produced within fourteen days of arraignment:  the evidence contained therein has a "reasonable likelihood" of affecting the outcome of the trial.  *Wearry*, 577 U.S. at 392.[3]

---

[3] The untranslated Portuguese documents produced presumably also contain *Brady/Giglio* material.  The government should be ordered to translate these documents or, at least, identify the *Brady/Giglio* material therein.

████████████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████

     The government should have produced these documents long ago.

**III.**    **The Government Likely Possesses Further *Brady* and *Giglio* Material.**

     Although the government touts the number of documents it has produced, certain

categories of documents are conspicuously absent from its productions. *See* ECF No. 54 at 3

("[T]he government has produced over 1.6 million pages of records. . .").[4] ██████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

---

[4] The government's suggestion that Mr. Oztemel's generalized agreement (the defense was offered no alternative and the parties' communications concerned Rule 16 discovery) to rolling discovery relieved the government from producing *Brady/Giglio* material within fourteen days of arraignment—as required by the Standing Order—is absurd. *See* ECF 54 at 2 (criticizing the defense's contention that *Brady/Giglio* material should have been produced fourteen days after arraignment "notwithstanding the agreed-upon rolling discovery plan. . . ."). And, as the government must be aware, the Standing Order requires any adjournment of the deadlines contained therein to be filed with the Court. Stnd. Ord. § (A).

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Similarly, the government has produced very few financial documents (e.g., bank activity statements and wire records) relating to:  (1) Mr. Berkowitz personally; (2) Mr. Innecco personally; (3) Trading Company #1; (4) Mr. Innecco's company Brazilian Chemicals; and (5) entities associated with Mr. Berkowitz that are not referenced in the Indictment (e.g., Berkowitz Assessoria e Consulto Empresarial Ltda.).  These are all likely to be sources of *Brady/Giglio* material and may be Rule 16 material as well.

The government has also not produced agent or attorney notes related to the witnesses interviewed.  *See, e.g., United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 165 (2d Cir. 2008)  ("proffer notes" were *Brady/Giglio* material).  With respect to attorney notes, the government claims "we are not aware of any legal authority supporting your demand for such materials."  ECF No. 47-5 at 2.  But *Brady* and *Giglio* apply to attorney notes.  *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 449 (1995) ("prosecutor's notes of his interview" with a witness were *Brady* and *Giglio* material).  The government cannot categorically withhold *Brady/Giglio* material just because that material is contained in attorney notes.

***

## CONCLUSION

For all the reasons set forth above, the Court should enter an Order directing the government to produce all *Brady* and *Giglio* materials that are in the government's possession, custody, or control, or the existence of which is known, or by the exercise of due diligence could be known to the attorneys for the government.

Dated: New York, New York
      June 21, 2023

Respectfully Submitted,

Nelson A. Boxer
David Hoffman
Chanel Thomas
PETRILLO KLEIN & BOXER LLP
655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0338
nboxer@pkbllp.com

Paul McConnell
638 Prospect Avenue
Hartford, Connecticut 06105
Phone: (860) 266-1166
paul@mcconnellfamilylaw.com