**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:23-CR-00026 (KAD) |
| | : | |
| GLENN OZTEMEL and | : | |
| EDUARDO INENECCO | : | |
| | : | |

**GLENN OZTEMEL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR
ENTRY OF AN ORDER DIRECTING THE GOVERNMENT
TO PRODUCE ALL *BRADY* AND *GIGLIO* MATERIAL**

Nelson A. Boxer
David Hoffman
Chanel Thomas
PETRILLO KLEIN & BOXER LLP
655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0338
nboxer@pkbllp.com

Paul McConnell
638 Prospect Avenue
Hartford, Connecticut 06105
Phone: (860) 266-1166
paul@mcconnellfamilylaw.com

August 25, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

FACTS ............................................................................................................................. 3

    I.    The Indictment. ................................................................................................ 3

    II.    Operation "Car Wash." .................................................................................... 3

    III.    Procedural History ........................................................................................... 4

        A.    Mr. Oztemel's First *Brady/Giglio* Motion .............................................. 4

        B.    The Discovery Requests. .......................................................................... 5

        C.    The Status Conference. ............................................................................ 7

GOVERNING LAW ....................................................................................................... 7

    I.    *Brady* and *Giglio*. ........................................................................................ 7

    II.    The Court's Standing Order. ........................................................................... 9

ARGUMENT ................................................................................................................. 10

    I.    The Government Must Produce *Brady/Giglio* Evidence from Attorney Proffers. ............ 10

    II.    The Government Must Make a Good Faith Effort to Produce *Brady/Giglio* Evidence Possessed by the Brazilian Authorities. ................................................................. 12

        A.    The Government Must Make a Good Faith Effort to Produce *Brady/Giglio* Material Possessed by a Foreign Government When Conducting a "Joint Investigation." ................ 12

        B.    The DOJ and Brazilian Authorities Conducted a "Joint Investigation" Stemming from Operation "Car Wash." ................................................................. 14

        C.    The Brazilian Authorities Likely Possess Significant *Brady/Giglio* Material. .......... 16

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Case**                                                     **Page(s)**

*Brady v. Maryland,*
    U.S. 83 (1963) .................................................................................................. 1, 5, 9

*Fraser v. City of New York,*
    No. 20 Civ. 04926, 2021 WL 1338795 ................................................................ 17

*Giglio v. United States,*
    405 U.S. 150 (1972) ............................................................................................ 1, 5

*Jimenez v. Graham,*
    No. 11 Civ. 6468, 2022 WL 2789217 .................................................................. 17

*Kyles v. Whitley,*
    514 U.S. 419 (1995) ............................................................................................. 11

*Napue v. Illinois,*
    360 U.S. 264 (1959) ............................................................................................... 9

*Ostrer v. United States,*
    577 F.2d 782 (2d Cir. 1978) ................................................................................... 4

*Turner v. United States,*
    582 U.S. 313 (2017) ............................................................................................. 11

*United States v. Andrade,*
    17 Crim. 497, Inf., ECF No. 6 (E.D.N.Y Sept. 22, 2017) ...................................... 3

*United States v. Avellino,*
    136 F.3d 249 (2d Cir. 1998) ................................................................................... 7

*United States. v. Berkowitz,*
    19 Crim. 64, Inf., ECF No. 9 (E.D.N.Y. Feb. 8, 2018) ................................... 3, 16

*United States v. Connolly,*
    No. 16 Crim. 370, 2017 WL 945934 ...................................................................... 8

*United States v. Coppa,*
    267 F.3d 132 (2d Cir. 2001) ................................................................................... 5

*United States v. Djibo,*
    No. 15 Crim. 88, 2019 WL 1517086 .................................................................... 11

*United States v. Gupta,*
    848 F. Supp. 2d 491 (S.D.N.Y. 2012)........................................................ 12

*United States v. Hunter*,
    32 F.4th 22 (2d Cir. 2022) ...................................................................... 7

*United States v. Ingarfield,*
    No. 20 Crim. 146, 2023 WL 3123002 ..................................................... 13

*United States v. Lee,*
    723 F.3d 134 (2d Cir. 2013)..................................................................... 13

*United States v. Luz,*
    20 Crim. 558, Inf., ECF No. 6 (E.D.N.Y. Dec. 9, 2020) .......................... 3

*United States v. Mahaffy,*
    693 F.3d 113 (2d Cir. 2012)..................................................................... 10

*United States v. Martinez,*
    388 F. Supp. 3d 225 (E.D.N.Y. 2019) ..................................................... 18

*United States v. Martoma,*
    990 F. Supp. 2d 458 (S.D.N.Y. 2014)................................................. 12, 17

*United States v. Middendorf,*
    No. 18 Crim. 36, 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018)................. 8

*United States v. Reid,*
    300 F. App'x 50 (2d Cir. 2008) ................................................................ 11

*United States v. Rodriguez,*
    496 F.3d 221 (2d Cir. 2007)....................................................................... 7

*United States v. Saffarinia,*
    424 F. Supp. 3d 46 (D.D.C. 2020) ........................................................... 10

*United States v. Sargeant Marine Inc.,*
    20 Crim. 363, Inf., ECF No. 7 (E.D.N.Y. Sept. 22, 2020)......................... 3

*United States v. Triumph Cap. Grp., Inc.*,
    544 F.3d 149 (2d Cir. 2008)....................................................................... 9

*United States v. Villa,*
    No. 12 Crim. 40, 2014 WL 280400 (D. Conn. Jan. 24, 2014).................... 8

*United States v. Washington*,
　263 F. Supp. 2d 413 ........................................................................................ 9

*United States v. Weigand*,
　482 F. Supp. 3d 224 (S.D.N.Y. 2020) .......................................................... 9

*United States v. Yousef*,
　327 F.3d 56 (2d Cir. 2003) ............................................................................. 13

*Wearry v. Cain*,
　577 U.S. 385 (2016) ...................................................................................... 16

**Statutes/Codes**

15 U.S.C. § 78dd-2(a) ...................................................................................... 3

18 U.S.C. § 371 .................................................................................................. 3

18 U.S.C. §1956(a)(2)(A) ................................................................................ 3

18 U.S.C. §1956(h) ............................................................................................ 3

28 U.S.C. § 1746 .............................................................................................. 20

**Constitutional Provisions**

U.S. Const. amend. V........................................................................................ 1

**Rules**

Standing Order .......................................................................................... *passim*

Defendant Glenn Oztemel renews his motion, brought pursuant to the Fifth Amendment to the United States Constitution and this Court's Standing Order governing discovery in criminal cases, for an Order requiring the forthwith production of all *Brady* and *Giglio* material, including evidence favorable to the defense contained in Attorney Proffers (defined below), or in the possession of the Brazilian authorities, and any other *Brady* and/or *Giglio* material in the government's possession, custody, or control. *See* U.S. Const. amend. V; Crim. App'x, Standing Order on Disc., U.S. District Ct. for the District of Ct. (Am. Dec. 19, 2022) (the "Standing Order").[1]

## INTRODUCTION

The Standing Order requires production of *Brady*/*Giglio* materials within fourteen days from arraignment (here, by March 13, 2023), and the defense is entitled to receipt of such information within sufficient time to use it effectively. *See generally Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). The government has again violated these requirements in two key respects.

**First**, the government has not produced *Brady/Giglio* material from statements of evidence or fact(s) made by attorneys for witnesses during meetings, presentations, or other conversations with the government ("Attorney Proffers"). The government told defense counsel that (1) it will not disclose *Brady/Giglio* material in Attorney Proffers if those facts are already known to the defense through government discovery or are contained in the notes of government counsel, *see* August 25, 2023 Declaration of Nelson A. Boxer ("Boxer Decl.") Exh. C, and (2) that no such Attorney Proffers ever occurred, Boxer Decl. ¶ 8. Neither representation is accurate. The government must produce *Brady/Giglio* material from an Attorney Proffer—even

---

[1] Available At: https://www.ctd.uscourts.gov/sites/default/files/Revised-Local-Rules-8.14.23.pdf

if it provides exculpatory evidence from one witness unknown to the defense that corroborates already-produced exculpatory evidence from another witness, and regardless of whether it is or is not contained in the notes of government counsel. Moreover, the defense is aware that an attorney for at least one witness made exculpatory representations of fact relating to Mr. Oztemel to government counsel—*i.e.*, representations contradicting allegations in the Indictment and the contentions of the government's cooperating witness, Rodrigo Berkowitz. Any *Brady/Giglio* material in that Attorney Proffer, or in similar presentations made by or communicated from other attorneys on behalf of their clients, must be produced.

**<u>Second</u>**, the government has not requested nor produced *Brady/Giglio* material in the possession of the Brazilian authorities. When the government conducts a joint investigation with a foreign government, as in the instant case, it must make a good faith effort to produce *Brady/Giglio* material in that foreign government's possession. Here, the government has worked closely with the Brazilian Ministério Público Federal ("MPF") and its "Operation Car Wash" taskforce—*i.e.*, the wide-ranging investigation into alleged corruption at Brazil's state-owned and state-controlled oil and gas company known as Petrobras. Specifically, the government and the MPF have exchanged documents, conducted joint witness interviews, and shared substantial fines collected in successful prosecutions related to Petrobras. While we are aware, from witness statements, that the MPF possesses *Brady/Giglio* material, the government has not sought exculpatory or impeachment materials from the Brazilian authorities and has informed the defense that it will not do so.

The Court should remedy these failures by ordering the government to comply with its *Brady/Giglio* obligations forthwith, and/or any other relief or sanction the Court deems appropriate to remedy the government's ongoing violations.

**FACTS**

## I. The Indictment.

The Indictment, unsealed on February 17, 2023, ECF No. 7, charges Glenn Oztemel and Eduardo Innecco in seven counts under four statutes: (1) conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"), *see* 18 U.S.C. § 371; (2) violation of the FCPA, *see* 15 U.S.C. § 78dd-2(a); (3) conspiracy to commit money laundering, *see* 18 U.S.C. §1956(h); and (4) money laundering, *see* 18 U.S.C. §1956(a)(2)(A).

According to the Indictment, Mr. Oztemel worked as an "oil and gas trader" for Trading Companies #1 and #2. *Id.* ¶ 6. Mr. Innecco "was an oil and gas broker and worked as an agent for various energy trading companies in Brazil, including Trading Company #1, Trading Company #2, and Trading Company #3." *Id.* ¶ 7. Purportedly, between 2010 and 2018, Mr. Innecco and Mr. Oztemel paid bribes to "foreign officials," as that term is defined under the FCPA—primarily, Rodrigo Berkowitz—an employee of Petrobras. *See id.* ¶ 2. In exchange, Mr. Berkowitz allegedly provided Mr. Innecco and Mr. Oztemel with confidential information that gave Trading Companies #1 and #2 "improper business advantages in trades" with Petrobras. *Id.* The Indictment alleges the participation of three unindicted Co-Conspirators, whose identities have been made known to the defense. *Id.* ¶¶ 16-18.

## II. Operation "Car Wash."

In March 2014, the MPF opened an investigation into corruption at Petrobras, which was given the codename "Lava Jato" (*i.e.*, "Car Wash"); it has resulted in approximately 180 criminal actions in Brazil. *See* Operacao Lava Jato, *Understand the Case*, Ministerio Publico Federal.[2] Evidence from Operation Car Wash led to FCPA prosecutions against individuals and entities in

---

[2] Available At: https://www.mpf.mp.br/grandes-casos/lava-jato (last visited: Aug. 25, 2023).

3

the United States, which involved significant cooperation between the U.S. Department of Justice (the "DOJ") and the MPF. *See, e.g.*, *U.S. v. Berkowitz*, 19 Crim. 64, Inf., ECF No. 9 (E.D.N.Y. Feb. 8, 2018); *U.S. v. Andrade*, 17 Crim. 497, Inf., ECF No. 6 (E.D.N.Y Sept. 22, 2017); *U.S. v. Luz*, 20 Crim. 558, Inf., ECF No. 6 (E.D.N.Y. Dec. 9, 2020); *U.S. v. Sargeant Marine Inc.*, 20 Crim. 363, Inf., ECF No. 7 (E.D.N.Y. Sept. 22, 2020). Indeed, the DOJ press releases related to these Car Wash prosecutions praised the "significant cooperation" of the MPF. *See, e.g.*, Press Release, *Sargeant Marine Inc. Pleads Guilty and Agrees to Pay $16.6 Million to Resolve Charges Related to Foreign Bribery Schemes in Brazil, Venezuela, and Ecuador*, Dep't J. (Sept. 22, 2020); Press Release, *Honeywell UOP to Pay Over $160 Million to Resolve Foreign Bribery Investigations in U.S. and Brazil*, Dep't J. (Dec. 19, 2022).[3]

## III. Procedural History.

Mr. Oztemel was arrested in Miami on February 15, 2023, and was released on bail the next day. *See* ECF No. 5. Mr. Oztemel was first presented in this district—and arraigned—on February 27, 2023. *See* ECF No. 17. Soon thereafter, counsel began unsuccessfully, and repeatedly, attempting to access the *Brady* and *Giglio* materials to which Mr. Oztemel is entitled.

### A. Mr. Oztemel's First *Brady/Giglio* Motion.

On June 6, 2023, Mr. Oztemel filed a motion to compel the government to produce *Brady/Giglio* material based (primarily) on the government's repeated citation to an incorrect standard for when its *Brady/Giglio* obligations are triggered. *See* ECF No. 48 at 11; ECF No. 56 at 2-5. The government, on several occasions, stated that it need only "produce evidence that is 'so clearly exculpatory or valuable for impeachment purposes that any reasonable prosecutor will

---

[3] Each Available At: https://www.justice.gov/opa/pr/sargeant-marine-inc-pleads-guilty-and-agrees-pay-166-million-resolve-charges-related-foreign; https://www.justice.gov/opa/pr/honeywell-uop-pay-over-160-million-resolve-foreign-bribery-investigations-us-and-brazil.

immediately recognize its utility to the defense.'" *See*, *e.g.*, ECF No. 54 at 4 (*quoting Ostrer v. United States*, 577 F.2d 782, 785 (2d Cir. 1978)). Contrary to this description, under *Brady/Giglio*, the government must disclose any evidence that is favorable to Mr. Oztemel—*i.e.*, that tends to exculpate him or is useful to impeach the credibility of a government witness—and has any reasonable likelihood of changing the outcome of the proceedings. *See United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001).[4] The Court scheduled oral argument for July 26, 2023. *See* ECF No. 58. The government requested that defense counsel withdraw the motion to compel, promising that the government "is presently in compliance" with its *Brady/Giglio* obligations, "which are summarized in *United States v. Coppa* . . ." Boxer Decl. Exh. A. Based on the government's e mail, on July 18, 2023, Mr. Oztemel withdrew his *Brady/Giglio* motion, because counsel for the government represented that "[t]he government is presently in compliance with its obligations under *Brady v. Maryland*, and *Giglio v. United States*, which are summarized in *United States v. Coppa*, as well as with its obligations under the Standing Order on Criminal Discovery of the District of Connecticut with respect to *Brady* and *Giglio* material." ECF No. 63 (full citations omitted). The Court canceled oral argument and the motion was withdrawn. ECF No. 65.

### B. The Discovery Requests.

On July 24, 2023, based in part on discovery already produced, defense counsel sent the government a letter containing additional and renewed discovery demands (the "Discovery Requests"). Boxer Decl. Exh. B. Among other things, defense counsel requested:

1. All memoranda, notes (including by attorneys for the government), and any other records of all meetings or any other oral or written statements of attorney proffers to the government of statements their clients would make in response to any government questioning.

---

[4] The government also misstated the Second Circuit's holding in *Ostrer*. *See* ECF No. 58 at 4.

2. Documents, notes, and memoranda (including held by law enforcement authorities in Brazil) documenting each of Rodrigo Berkowitz's ████████████████████

3. All records of agreements with, including any benefits offered or provided to, Rodrigo Berkowitz by Brazilian authorities, including any leniency offered or provided.

4. All records of agreements with, including any benefits offered or provided to, ████ ████████████████████████████████ ████████████████

5. Rodrigo Berkowitz's Brazilian income tax returns for the years 2010-2020.

*Id.* at 1-2. The letter explained that Mr. Oztemel is entitled to information held by the Brazilian authorities because the DOJ and MPF had conducted a joint investigation. *Id.* at 1.

Two weeks later, on August 8, 2023, the government responded (the "Government Response"), and, with respect to records relating to Attorney Proffers, stated:

> We are also reviewing any factual representations made by attorneys for represented parties and will disclose any relevant facts that are not already known to you through other discovery pursuant to our *Brady* and *Giglio* obligations. Finally, as we stated in our May 26, 2023 letter, we are not aware of any legal authority supporting your demand for notes prepared by government attorneys.

Boxer Decl. Exh. C at 1. Regarding the requests for information possessed by the Brazilian authorities, the government stated:

> [W]e have already produced all responsive records obtained from Brazilian authorities pursuant to the MLAT process (see Production Volume 6) and all documents voluntarily provided to the government by Mr. Berkowitz (see Production Volumes 2, 4 & 5). To the extent that law enforcement authorities in Brazil may be in possession of additional records responsive to this request, such records are outside of the government's possession, custody, and control. We do not share your characterization of the United States' and Brazil's respective investigations as a "joint" investigation.

*Id.* at 1-2 (internal citations omitted). To date, the government has not produced any documents or made any disclosures in response to the Discovery Requests.

### C.  The Status Conference.

On August 10, 2023, the Court held a status conference (the "Status Conference"), during which defense counsel stated that Mr. Oztemel likely would move under *Brady/Giglio* to compel discovery of (1) Attorney Proffers and (2) materials held by the Brazilian authorities.  *See* ECF No. 71 at 10:13-11:20.  After the conference, government counsel represented to defense counsel that no Attorney Proffers took place and that the DOJ Fraud Section has an unwritten policy precluding them, so as to avoid the need to produce (or to litigate the production of) any documentation concerning them.  Boxer Decl. ¶ 8.  As described below, we take issue with the government's statement that no Attorney Proffer has taken place.

## GOVERNING LAW

### I.  *Brady* and *Giglio*.

In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  This disclosure duty applies to impeachment evidence as well as to exculpatory evidence.  *See Giglio*, 405 U.S. at 154.  "[T]rue *Brady* material must be (1) favorable, (2) suppressed, and (3) prejudicial."  *United States v. Hunter*, 32 F.4th 22, 31 (2d Cir. 2022).

**Favorable**.  Evidence is "favorable" when it "tends to exculpate the accused" or is "useful to impeach the credibility of a government witness."  *Coppa*, 267 F.3d at 139; *see also United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (*Brady* material "go[es] to the heart of the defendant's guilt or innocence" or has "the potential to alter the jury's assessment of the credibility of a significant prosecution witness").  *Brady* and *Giglio* are not limited to admissible evidence:  the government must "make the defense aware of material information potentially

7

leading to admissible evidence favorable to the defense." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007).

**Suppressed**.  The *Brady* obligation is violated when the prosecution fails to disclose information "known to the prosecutor."  *Hunter*, 32 F.4th at 35 (quotations omitted). Information is "known to the prosecutor" when it "is possessed by others on the 'prosecution team'"—even if it is not known to the prosecutor himself/herself.  *Id.* at 36.  Although prosecutors need not search the "whole-of-government" for *Brady* material, *id.* at 37, they must disclose information received from another agency—or even foreign government—where they have conducted a "joint investigation," *United States v. Middendorf*, No. 18 Crim. 36, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018); *see United States v. Connolly*, No. 16 Crim. 370, 2017 WL 945934, at *8 (S.D.N.Y. Mar. 2, 2017) (applying "joint investigation" analysis to a foreign government).

**Prejudice/Materiality**.  The materiality of evidence is determined by reference to its likely impact on a trial.  "[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different."  *Coppa*, 267 F.3d at 142.  The government has a *Brady* or *Giglio* disclosure obligation "where non-disclosure of a particular piece of evidence would deprive a defendant of a fair trial."  *Id*. at 140.

Most *Brady* motions are adjudicated under these standards after a defendant has been convicted.  *See Coppa*, 267 F.3d at 140 ("Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty . . . is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of

the trial."). And there is an "inherent difficulty" in assessing materiality/prejudice before trial,

when much of the contours of the government's case-in-chief (*e.g.*, its witnesses) are unknown.

*United States v. Villa*, No. 12 Crim. 40, 2014 WL 280400, at *1-2 (D. Conn. Jan. 24, 2014).

Nevertheless, courts conducting pre-trial *Brady* analyses apply a similar examination as post-

trial: whether there is a sufficient probability that disclosure of the evidence would "undermine[

] confidence in the outcome of the trial." *Coppa*, 267 F.3d at 140-41; *see Villa*, 2014 WL

280400, at *2. Finally, district courts have wide discretion to order such disclosures before trial.

*See Villa*, 2014 WL 280400, at *2 (citing *Coppa*, 267 F.3d at 146).

## II. The Court's Standing Order.

In the District of Connecticut, in "all criminal cases," the Court's Standing Order

requires:

> (A)(1) within 14 days after the arraignment or within the period established by the discovery conference or otherwise established by the court, the attorney for the government shall furnish to defense counsel copies ... of the following items within the government's possession, custody or control, the existence of which is known or by the exercise of due diligence could be known to the attorney for the government. . . .
>
>> (j) all information that may be favorable to the defendant on the issues of guilt or punishment and that falls withing the scope of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny"; [and]
>>
>> (k) all information concerning the existence and substance of any payments, promises of immunity, leniency, or preferential treatment, made to prospective government witnesses, within the scope of *United States v. Giglio*, 450 U.S. 150 (1972), *Napue v. Illinois*, 360 U.S. 264 (1959), and their progeny[.]

Stnd. Ord. § (A); *see also United States v. Washington*, 263 F. Supp. 2d 413, 421 (D. Conn.

2003) (*Brady*/*Giglio* violation based on failure to disclose in the time set by the Standing Order).

**ARGUMENT**

The government has not sought relief from the deadlines in the Standing Order; it needed to produce all *Brady/Giglio* evidence by March 13, 2023. The defense should have received the information demanded in the Discovery Requests long ago.

**I.** **The Government Must Produce *Brady/Giglio* Evidence from Attorney Proffers.**

Exculpatory material in an Attorney Proffer is subject to *Brady/Giglio* to the same degree as exculpatory material in a witness proffer. *See United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 161-65 (2d Cir. 2008) (*Brady/Giglio* violation based on non-disclosure of agent notes on Attorney Proffer); *United States v. Weigand*, 482 F. Supp. 3d 224, 248-49 (S.D.N.Y. 2020) (ordering the government to produce information relating to an Attorney Proffer under *Brady/Giglio*).[5] The government has stated three grounds for not producing *Brady/Giglio* material contained in Attorney Proffers. None is valid.

**First**, after the Status Conference, government counsel stated that no Attorney Proffers have occurred because the DOJ Fraud Section has a policy against them. Boxer Decl. ¶ 8. This representation is questionable for two primary reasons:

- The defense is aware that attorneys for a witness made a presentation to the government that included factual representations that directly contradict allegations in the Indictment and key contentions in Mr. Berkowitz's 302s—quintessential *Brady/Giglio* material.

- The Government Response states that the government is "reviewing any factual representations made by attorneys for represented parties." Boxer Decl. Exh. C at 1. If no attorney proffered to the government, then there should be nothing for the government to "review."

The government has not produced any notes or summaries of any statement(s) of evidence or fact(s) favorable to Mr. Oztemel made by any attorney for a witness during a meeting,

---

[5] *See also United States v. Saffarinia*, 424 F. Supp. 3d 46, 92 (D.D.C. 2020) ("[T]he Court directs the government to identify the *Brady* material, including the attorney proffer materials, within its production.")

presentation, or conversation with the government. *See United States v. Mahaffy*, 693 F.3d 113, 131 n.11 (2d Cir. 2012) ("It is not enough that a defendant knew a potential witness's identity; the defendant had to know or should have known the essential facts permitting him to take advantage of any exculpatory evidence.").

**Second**, the government states that it is "reviewing any factual representations made by attorneys for represented parties and will disclose any relevant facts that are not already known to [Mr. Oztemel] through other discovery pursuant to our *Brady* and *Giglio* obligations." Boxer Decl. Exh. C at 1. The government has provided no legal support for limiting its production of *Brady/Giglio* material in attorney proffers (1) to "relevant facts" (*i.e.*, not the actual notes) that are (2) not found elsewhere in its voluminous discovery productions. Although evidence is not "suppressed" under *Brady* if the defendant "knew or should have known the 'essential facts' permitting him to take advantage" of any exculpatory evidence, an Attorney Proffer regarding one witness unknown to the defense that corroborates already-produced exculpatory evidence from another witness is new exculpatory information—*i.e.*, new "relevant facts"—as it is an "essential fact" from a potentially valuable witness "only known to the government." *United States v. Djibo*, No. 15 Crim. 88, 2019 WL 1517086, at *8 (E.D.N.Y. Apr. 8, 2019) (quotation, emphasis omitted). Accordingly, the records of such attorney proffers must be produced in full.

And **third**, the government states that it will not produce *Brady/Giglio* material relating to attorney proffers to the extent it is found in the notes of government counsel because "[they] are not aware of any legal authority supporting [the] demand for notes prepared by government attorneys." Boxer Decl. Exh. C at 2. This categorical refusal to produce *Brady/Giglio* materials in attorney notes is unjustifiable. The government must inform the defense of *Brady/Giglio* material regardless of format. *See, e.g.*, *Rodriguez*, 496 F.3d at 226 (government must disclose

*Brady/Giglio* material that was conveyed orally—*i.e.*, even if no document or recording exists).

Courts do not relieve the government of *Brady/Giglio* obligations simply because the material in question is contained in a prosecutor's or agent' notes.  *See Kyles v. Whitley*, 514 U.S. 419, 449 (1995) ("prosecutor's notes of his interview" with a witness were *Brady/Giglio* material); *see, e.g.*, *Triumph Cap.*, 544 F.3d at 161-65 (noting the government's failure to disclose investigating agent's proffer notes violated *Brady*); *see also Turner v. United States*, 582 U.S. 313, 320-23 (2017) (analyzing whether attorney notes were *Brady* material); *In United States v. Reid*, 300 F. App'x 50, 52 (2d Cir. 2008) (summary order) (same).  Otherwise, prosecutors could avoid disclosing exculpatory information simply by putting it in their notes.

## II. The Government Must Make a Good Faith Effort to Produce *Brady/Giglio* Evidence Possessed by the Brazilian Authorities.

The Brazilian authorities possess *Brady/Giglio* evidence relevant to the instant prosecution.  The government must make a good faith effort to acquire and produce that evidence because it has jointly worked with the Brazilian authorities and brought this prosecution in reliance on and in conjunction with Operation Car Wash.  Allowing the government to limit its *Brady/Giglio* obligation to the information it has selectively requested and received from the MPF—without requiring it to make a good faith effort to pursue critical exculpatory information from the MPF—would be unfair and contrary to governing precedent.

### A. The Government Must Make a Good Faith Effort to Produce *Brady/Giglio* Material Possessed by a Foreign Government When Conducting a "Joint Investigation."

The government must produce *Brady/Giglio* evidence possessed by members of the "prosecution team."  *Hunter*, 32 F.4th at 35-36 (quotations omitted).  If the government works with an outside, domestic agency, it must produce *Brady/Giglio* evidence in the "sole possession" of that agency when the government and that agency have engaged in a "joint

investigation." *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014). This holding requires courts to consider whether the government and the agency "engaged in joint fact-gathering," *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012), examined on a "case-by-case" basis, *Martoma*, 990 F. Supp. 2d at 460-61. Courts typically evaluate five (non-exclusive) factors in determining whether a joint investigation exists: "whether the other agency (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *United States v. Ingarfield*, No. 20 Crim. 146, 2023 WL 3123002, at *3 (S.D.N.Y. Apr. 27, 2023).

Courts that have examined the issue of coordination between the DOJ and foreign law enforcement have used the "joint investigation" with a domestic agency analysis to determine whether the DOJ must produce exculpatory material from foreign partners. *See Connolly*, 2017 WL 945934, at *8. However, because principles of international comity prevent the DOJ from demanding information from its foreign counterparts, even in a "joint investigation," the "Government's *Brady* obligation would extend only to a good-faith effort to get documents from the foreign sovereign." *Id.* at *9; *cf. United States v. Lee*, 723 F.3d 134, 141 (2d Cir. 2013) (Rule 16 requires "good-faith efforts to obtain the documents" underlying wiretaps in "joint investigation" with foreign government); *United States v. Yousef*, 327 F.3d 56, 129 (2d Cir. 2003) (Jencks Act requires a "good-faith effort to obtain the statements of prosecution witnesses in the possession of the foreign government" in "joint investigation") (quotation omitted).

**B. The DOJ and Brazilian Authorities Conducted a "Joint Investigation" Stemming from Operation "Car Wash."**

The prosecution of Mr. Oztemel stems from Operation Car Wash and involves extensive cooperation between the DOJ and MPF. Three of the factors courts consider for the "joint investigation" analysis illustrate the point.[6]

**First**, the government conducted joint interviews with the MPF. The government has produced Portuguese witness statements ███████████████████████████ ██████████████████████████████████████████████ Boxer Decl. Exh. D. Government counsel attended these proffers along with members of Brazil's "Lava Jato Investigation Task Force"—including members of the MPF and Brazil's Federal Police. *Id.*

████████████████████████████████████████████████████

███████ █████████████████████████████████████████

████████████████████████. *See, e.g.*, Boxer Decl. Exh. E at 2 (describing the alleged Miami 2011 meeting). This constitutes "joint fact-gathering." *Gupta*, 848 F. Supp. 2d at 494.

**Second**, the government has relied on the MPF's documents and work product. The government has produced as Rule 16 material MPF investigation reports in Portuguese ███████ ███████████████████████████████████ Boxer Decl. Exh. F. These investigative reports, which seem to have been created in 2018, are the clear blueprint for the government's investigation, which began in 2019; thus, the MPF—not the DOJ—is the catalyst behind this prosecution. The government has also produced non-Petrobras emails, presumably produced to the DOJ by Brazilian law enforcement, that contain communications from "alias" email addresses of individuals who were subjects of the MPF investigation, ████████████.

---

[6] The defense is unaware of whether or not the Brazilian authorities directly or indirectly participated in U.S. grand jury proceedings.

Boxer Decl. Exh. G.  Moreover, the government showed ██████████████████████

████████████████████████████████████████████████████████████████

███████████████████████ suggesting that the government received the documents from

the MPF.  Boxer Decl. Exhs. H and I.

And **third**, the government has coordinated its prosecution strategy with the MPF across

the Operation Car Wash cases.  The profit sharing in the DOJ's non-prosecution agreements

("NPAs") and deferred prosecution agreements ("DPAs") in Petrobras-related FCPA actions

illustrates the point.  For example, on September 26, 2018, Petrobras itself entered a NPA in

which it agreed to pay a criminal penalty of $853.2 million for FCPA violations relating to bribes

allegedly received by its employees.  *See* Non-Prosecution Agreement, Petroleo Brasileiro S.A.,

U.S. Dept' J. (Sept. 26, 2018).[7]  Under the terms of the NPA, $85.3 million (10%) would be paid

to the DOJ; $85.3 million (10%) would be paid to the Securities and Exchange Commission; and

$682.5 million (80%) would be paid to the MPF.  *See id.* at 6.

Similarly, on December 3, 2020, Vitol Inc.—a competitor of Trading Companies #1 and

#2—entered a DPA with the DOJ, agreeing to pay $135 million relating to allegations that its

employees bribed Petrobras officials.  *See* Deferred Prosecution Agreement, Vitol Inc., U.S.

Dept' J. (Dec. 3, 2020) ("Vitol DPA").[8]  Under the Vitol DPA, Vitol agreed to pay $45 million

(33%) of its criminal penalty to the Brazilian authorities.  *Id.* at 10.  Like this case, these other

Car Wash prosecutions stemmed from the conduct of—and pivoted on the cooperation of—

Rodrigo Berkowitz.  *See, e.g.*, Vitol DPA ¶ 9 (describing the conduct of "Brazilian Official 2",

presumably Berkowitz, who used the codenames "Batman" and "Robson Santos").

---

[7] Available At:  https://www.justice.gov/opa/press-release/file/1096706/download.
[8] Available At: https://www.justice.gov/d9/press-releases/attachments/2020/12/03/vitol_dpa_0.pdf.

Likewise, the DOJ entered into a Deferred Prosecution Agreement with Honeywell UOP LLC, a subsidiary of Honeywell International Inc., under which Honeywell agreed to pay $160 million to resolve investigations relating to its employees alleged payments of about $4 million in bribes to Petrobras officials in order to win a contract to design and build an oil refinery. *See* Deferred Prosecution Agreement, Honeywell UOP LLC, U.S. Dept' J., 22 Crim. 624, ECF No. 10 (S.D.T.X. Dec. 19, 2022) ("Honeywell DPA").[9] Under the terms of the Honeywell DPA, Honeywell agreed to pay $81 million to the SEC; $39.4 million to the DOJ; and $39.6 million to the Brazilian authorities. *See id.*

This high degree of cooperation makes the MPF part of the "prosecution team" for purposes of *Brady/Giglio*. The fact that the government resorted to MLAT procedures to gather evidence from Brazilian authorities should not bear on the issue of whether it conducted a joint investigation with Brazil; we are unaware of any authority that permits a country to ignore its requirement of formal process for foreign evidence gathering in a joint investigation. *See* U.S.A. and the Gov. of the Fed. Rep. of Brazil on Mutual Legal Assistance in Crim. Matters, Treaty Doc. 105-42, 105th Congress, 2d Session (Oct. 14, 1997) (creating a "Central Authority" in the United States and in Brazil for all law enforcement evidence gathering requests).

### C. The Brazilian Authorities Likely Possess Significant *Brady/Giglio* Material.

The government's case is built on a single cooperator: Rodrigo Berkowitz. The Indictment is replete with references to his conduct. In 2019, Mr. Berkowitz pleaded guilty to conspiracy to commit money laundering pursuant to a cooperation agreement. *See U.S.A. v. Berkowitz*, 19 Crim. 64, Guilty Plea Alloc., ECF No. 13 (E.D.N.Y. Feb. 14, 2019). The government's case will turn on Mr. Berkowitz's testimony and his credibility. Given Mr.

---

[9] Available At: https://www.justice.gov/d9/press-releases/attachments/2023/01/13/honeywell-uop-dpa-from-docket_0.pdf.

Berkowitz's overwhelming importance to the government's case, evidence undermining his credibility is necessarily material. *See, e.g.*, *Wearry v. Cain*, 577 U.S. 385, 394 (2016) (finding a *Brady/Giglio* violation because jurors "might have thought differently" about the government's star witness had they known of "the possibility of a reduced sentence on an existing conviction").

There is a strong basis for the Court to conclude that the MPF possesses information that would undermine Mr. Berkowitz's credibility. For example, ███████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████. Boxer Decl. Exh. H at 2. ██████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████ have also not been produced. Such documents should be requested and produced forthwith. *See, e.g.*, *Fraser v. City of New York*, No. 20 Civ. 04926, 2021 WL 1338795, at *7 (S.D.N.Y. Apr. 9, 2021) (*Brady/Giglio* violation based on failure to disclose prior lies and fabricated evidence by police officer witnesses).

████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████ has also not been produced to the defense. Boxer Decl. Exh. D. The defense does not know what ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████. *See Jimenez v. Graham*, No. 11 Civ. 6468, 2022 WL 2789217, at *4 (S.D.N.Y. July 15, 2022) ("*Brady* and its progeny require more than just the disclosure of *quid pro quo* agreements; they require that the prosecution disclose any evidence

impeaching a witness's credibility.") (citing *Napue v. People of State of Ill.*, 360 U.S. 264, 270 (1959)).

Furthermore, 

Boxer Decl. Exh. I at 9.

. *See United States v. Martoma*, No. 12 Crim. 973, 2014 WL 31704, at *4 (S.D.N.Y. Jan. 6, 2014) (*Brady/Giglio* requires disclosure of "threatened" criminal prosecution or "promised" leniency to cooperators). While Mr. Berkowitz certainly has a strong motive to lie about Mr. Oztemel to stay out of an American prison, he may have an even stronger motive to lie to stay out of a Brazilian prison. *See, e.g.*, Ernesto Londoño, *Prison Riot Leaves 57 Dead in Northern Brazil*, N.Y. Times (July 29, 2019).[10]   And if Mr. Berkowitz is lying, the "bulk" of the government's case would "unravel"—making all this evidence in the MPF's possession *Brady/Giglio* material. *United States v. Martinez*, 388 F. Supp. 3d 225, 235 (E.D.N.Y. 2019).

## CONCLUSION

For all the reasons set forth above, the Court should enter an Order directing the government to forthwith produce all *Brady* and *Giglio* materials in Attorney Proffers that are in the government's possession, custody, or control, or the existence of which is known, or by the exercise of due diligence could be known to the attorneys for the government, and the Court

---

[10] Available At:  https://www.nytimes.com/2019/07/29/world/americas/brazil-prison-dead.html#:~:text=RIO%20DE%20JANEIRO%20%E2%80%94%20A%20fight,decapitated%2C%20according%20to%20prison%20officials.

should enter an Order compelling the government to make a good faith effort to obtain *Brady* and *Giglio* material from the Brazilian authorities.

Dated: New York, New York
      August 25, 2023

Respectfully Submitted,

Nelson A. Boxer
David Hoffman
Chanel Thomas
PETRILLO KLEIN & BOXER LLP
655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0338
nboxer@pkbllp.com

Paul McConnell
638 Prospect Avenue
Hartford, Connecticut 06105
Phone: (860) 266-1166
paul@mcconnellfamilylaw.com