UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:23-CR-00026 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| GLENN OZTEMEL | ) | |
| | ) | |
| | ) | JULY 2, 2024 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION TO DISMISS; MOTION FOR BILL OF PARTICULARS (ECF NO. 112)**

Kari A. Dooley, United States District Judge

On February 14, 2023, a federal grand jury returned a seven-count Indictment charging Defendant Glenn Oztemel[1] ("Defendant") with violations of the Foreign Corrupt Practices Act, money laundering, and conspiracies related to same. On August 29, 2023, the grand jury returned a Superseding Indictment (the "SI") against Defendant and others[2] in which Defendant is charged with conspiracy to violate the Foreign Corrupt Practices Act (FCPA) (Count One), violations of the FCPA (Counts Two, Three and Four), conspiracy to engage in international promotional money laundering (Count Five), and money laundering (Counts Six and Seven). *See* SI, ECF No 76 at ¶¶ 2, 31, 33, 36. Pending before the Court is Defendant's motion to dismiss all claims against him and absent same a motion for a bill of particulars.[3]

**Allegations**

      **Count One—All Defendants—Conspiracy to Violate the FCPA**

---

[1] Co-Defendant Eduardo Innecco was also indicted. He is presently in France awaiting extradition proceedings.
[2] Co-Defendant Gary Oztemel, Defendant's brother, was added as a defendant. Gary Oztemel pled guilty to Count Nine of the superseding indictment on June 24, 2024.
[3] Defendant's Notice of Motion at ECF No. 112 and its associated Memorandum in Support at ECF No. 114 also sought suppression of evidence seized from certain email accounts and a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The motion to suppress was decided by way of separate memorandum of decision on June 21, 2024. This memorandum of decision applies only to the motion to dismiss and for a bill of particulars.

Defendant, a resident of Connecticut, was an oil and gas trader for a commodities trading company, Trading Company #1 ("TC1"), and later a second commodities trading company, Trading Company #2 ("TC2"). *Id*. at ¶ 7. Co-Defendant Gary Oztemel was the owner and president of Oil Trade & Transport S.A. ("OTT"). *Id*. at ¶ 8. Gary Oztemel also owned and controlled Petro Trade Services, Inc., ("Petro Trade"). *Id*. at ¶ 25. Eduardo Innecco, a citizen of Brazil and Italy, though a resident of Brazil, was an oil and gas trader who worked as an agent for various energy trading companies in Brazil, including TC1, TC2, and OTT. *Id*. at ¶ 9. Innecco owned and controlled several companies referred to in the SI as "Brazilian Chemicals," "Morgenstern" and "Wertech." *Id.*

Between in or about 2010 and continuing until in or about 2018, the defendants agreed to pay and did pay bribes to foreign officials at Petrobras, to include Rodrigo Berkowitz, and they did so on behalf of TC1, TC2 and OTT. In exchange for these bribes, foreign officials at Petrobras provided the defendants with confidential information which gave TC1, TC2 and OTT improper business advantages in trades with Petrobras. *Id.* at ¶ 2

Rodrigo Berkowitz was a citizen of Brazil who worked as a trader at Petrobras America Inc., a wholly owned subsidiary of Petrobras, Brazil's state-owned oil company. *Id.* at ¶ 15. Uruguay Company was a shell company formed in Uruguay for the benefit of Berkowitz. *Id.* at ¶ 20. Berkowitz used Uruguay Company to receive and conceal bribe payments from and on behalf of TC1 and TC2. *Id.*

In furtherance of and to promote the corrupt bribery scheme, Defendant and Innecco agreed to and did cause TC1 and TC2 to transmit the corrupt payments from the United States to Switzerland and Uruguay. The payments were made in response to invoices for purported consulting services submitted by Innecco. *Id.* at ¶ 4.

In addition, the defendants agreed to and did cause OTT to facilitate multiple "back-to-back" trades through which OTT would buy from Petrobras and then immediately resell to TC1 and TC2. Gary Oztemel would thereafter use some of the profits from these trades to make corrupt payments from accounts in the United States to Eduardo Innecco to or through bank accounts in Switzerland. *Id.* at ¶ 5.

Count One, tracking the statutory language, charges a conspiracy to violate the FCPA, specifically, 15 U.S.C. § 78dd-2(a) and § 78dd-3(a). *Id.* at ¶ 26. The alleged purpose of the conspiracy was to offer, promise, and pay bribes to foreign officials, including Berkowitz, in order to obtain and retain business with Petrobras, for and with, and direct business to TC1, TC2 and OTT. *Id.* at ¶ 27. In addition to the allegations summarized above, the manner and means of the conspiracy included that the defendants would and did cause TC1, TC2 and OTT to make payments to Innecco-controlled companies for the purpose of paying bribes to foreign officials, including Berkowitz. *Id.* at ¶ 28(d). Further, it alleged that the defendants would and did conceal the bribe payments by, among other ways, causing TC1, TC2 and OTT to pay purported commissions and purported profit sharing to Innecco through Innecco-controlled companies and by using the Innecco-controlled companies to pay bribes to foreign officials, including Berkowitz, in cash and into an account held in the name of Uruguay Company. *Id.* at ¶ 28(e).

The SI then lists forty (40) overt acts spanning from 2010 through November 27, 2018. *Id.* at ¶ 29. They will be discussed as needed.

**Counts Two, Three and Four—Glenn Oztemel and Innecco—FCPA**

Counts Two, Three, and Four track the statutory language of 15 U.S.C. § 78dd-2(a).[4] Eliminating any reference to subsection (a)(2), the SI provides:

> On or about the dates set forth below, … Glenn Oztemel and Innecco being a domestic concern and an employee and agent of a domestic concern (Glenn Oztemel), and an agent and officer of a domestic concern (Innecco), together with others … did willfully make use of, and aid, abet and willfully cause others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift promise to give and authorization of the giving of anything of value to a foreign official, …and to a person while knowing that all and a portion of such money and thing of value would be and had been offered, given and promised to a foreign official … for purposes of (i) influencing acts and decisions of such foreign official, …thereof in his, her or its official capacity; (ii) inducing such foreign official, …to do and omit to do acts in violation of the lawful duty of such official …; (iii) securing any improper advantage; and (iv) inducing such foreign official, … to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Glenn Oztemel, [TC1], [TC2], Co-Conspirator[s] and others in obtaining and retaining business for and with, and directing business to, [TC1], [TC2], Glenn Oztemel and others, as set forth below.

*Id.* at ¶ 31. Count Two is based upon a May 19, 2018, wire transfer from TC2 in the United States to Wertech in Uruguay. *Id.* Count Three is based upon a June 12, 2018, wire transfer from TC2 in the United States to Wertech in Uruguay. *Id.* Count Four is based upon a September 12, 2018, email sent by Innecco to an employee at TC2, copying Glenn Oztemel and another Co-Conspirator, attaching two invoices seeking payment of a consultancy fee and a commission. *Id.*

**Count Five—All Defendants—Money Laundering Conspiracy**

Count Five charges conspiracy to commit so-called "promotional" money laundering. It alleges a conspiracy to transport, transmit and transfer monetary instruments and funds from within the United States to a place outside the United States, with the intent to promote the carrying on

---

[4] Inexplicably, though acknowledging at oral argument that there is no evidentiary basis or claim that Defendant violated § 78dd-2(a)(2), which covers payments to foreign political parties, officials thereof or candidates for foreign political office, the Government nonetheless included such a violation in Counts Two, Three and Four.

of one or more specified unlawful activities, to wit, violations of the FCPA at §§ 78dd-2(a) and 78dd-3(a)[5]; and various violations of the Brazilian Penal Code. *Id*. at ¶ 33. It was part of the conspiracy that Innecco sent invoices to employees of TC1 and TC2, to include Glenn Oztemel, seeking payment of consulting fees and commissions, for the purpose of promoting the offer, promise, and payment of bribes to Petrobras officials, including Berkowitz. *Id*. at ¶ 34(a). It was further part of the conspiracy that Glenn Oztemel caused TC1 and TC2 to initiate wire transfers from their respective bank accounts in the United States to bank accounts in Switzerland and Uruguay in the name of Innecco-controlled companies, again for the purpose of promoting the offer, promise and payment of bribes to Petrobras officials. *Id.* at ¶ 34(b). It was further part of the conspiracy that Innecco sent emails and spreadsheets to Gary Oztemel listing payments to a purported "investment fund" for the same purpose. *Id.* at ¶ 34(c). And it was further part of the conspiracy that Innecco sent emails to Gary Oztemel attaching invoices from Morgenstern to OTT seeking purported "profit sharing" payments, again, for the same purpose of promoting the underlying unlawful offer, promise and payment of bribes. *Id.* at ¶ 34(d).

**Counts Six and Seven—Money Laundering—Glenn Oztemel and Innecco**

Counts Six and Seven are the substantive counts which were the object of the conspiracy count in Count Five. They track the statutory language of 18 U.S.C. § 1956(a)(2)(A) and include an aiding and abetting allegation. *Id.* at ¶ 36. Count Six involves an August 10, 2018, wire transfer from TC2's account in the United States to Wertech's account in Uruguay. *Id.* Count Seven involves a November 13, 2018, wire transfer from TC2's account in the United States to Wertech's account in Uruguay. *Id.*

---

[5] The Superseding Indictment does not contain any substantive violations of § 78dd-3(a) against any defendant.

Counts Eight and Nine are brought against Gary Oztemel and are not the subject of the pending motions.

**Motion to Dismiss**

    **Standard of Review**

"The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Raniere*, 384 F. Supp. 3d 282, 299 (E.D.N.Y. 2019) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)). The Federal Rules of Criminal Procedure permit a defendant to file a pretrial motion to dismiss based upon a defect in an indictment or in the initiation of the prosecution, provided "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Calhelha*, 456 F. Supp. 2d 350, 356–57 (D. Conn. 2006) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)). "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Levine*, 249 F. Supp. 3d 732, 738 (S.D.N.Y. 2017) (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)). "When deciding a motion to dismiss an indictment pursuant to Fed. R. Crim. Pro. 12(b), a court must accept all factual allegations in the indictment as true." *United States v. Kogan*, 283 F. Supp. 3d 127, 134 (S.D.N.Y. 2017) (quotation marks and citation omitted).

**Discussion**

Defendant moves to dismiss the various counts of the SI on multiple grounds: The substantive counts are not adequately alleged to be connected to any bribery payments to Berkowitz; the commission payments to Innecco on which the Government relies post-date bribes paid to Berkowitz by years and therefore cannot be "in furtherance of" the illicit payments; the conspiracy counts are untimely; and Berkowitz is not a foreign official for purposes of all counts insofar as Petrobras is not an "Instrumentality" of Brazil. Def.'s Mem., ECF No. 114 at 10, 13, 18–22, 23. The Government responds that the Indictment adequately tracks the applicable statutory language—it satisfies Rule 7 and is sufficient to put the Defendant on notice as to the charges against him and to allow him to plead double jeopardy in the future—that the conspiracy counts are timely, and that instrumentality is a question for the jury. [6] Gov. Opp'n, ECF No. 127 at 16, 22, 29. The Court agrees with the Government.

**The Substantive Counts (Counts Two, Three, Four, Six and Seven)**

The FCPA provides in relevant part:

(a) It shall be unlawful for any domestic concern ..., or for any officer, director, employee, or agent of such domestic concern ..., to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, [or] promise to pay ... anything of value to—

    (1) any foreign official ... or

    (3) any person, while knowing that all or a portion of such money ... will be offered, given, or promised, directly or indirectly, to any foreign official ... for purposes of—

        (A)(i) influencing any act or decision of such foreign official ... in his ... official capacity .... (ii) inducing such foreign official… to do or omit to do any act in violation of the lawful duty of such foreign official … (iii) securing any improper advantage; or

---

[6] The Court agrees with the Government that this claim is not properly raised in a motion to dismiss. The issue of whether Berkowitz was a foreign official, or more to the point, the nature of the relationship between Petrobras and Brazil, goes to the merits of the case and the evidence to be offered at trial. This argument is therefore not discussed further.

7

>> (B) inducing such foreign official … to use his … influence with a foreign government or instrumentality therefore… to affect or influence any act or decisions of such government or instrumentality …

15 U.S.C. § 78dd–2(a)(1) and (a)(3). In order to obtain a conviction under these subsections of the statute, the government must prove beyond a reasonable doubt that the defendant is (1) a domestic concern or employee or agent thereof; (2) that made use of a means or instrumentality of interstate commerce; (3) corruptly; (4) in furtherance of an offer, payment or promise to pay anything of value; (5) to any foreign official, or alternatively, to any person knowing that the money would be offered, promised or given, directly or indirectly to a foreign official; (6) for one of the four purposes delineated. *See e.g., Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber,* 327 F.3d 173, 179–80 (2d Cir. 2003) (Identifying elements of § 78dd-2(a)(3)). The fifth element varies and depends upon whether the offer, promise or payment is made to a foreign official, or whether the offer promise or payment is to be made to a "person" knowing that the person would then in turn pay a foreign official. The sixth element may also vary depending upon the purpose for which the offer, promise or payment is allegedly made.

Here, the government, tracking the statutory language, combined in each FCPA count a violation of both § 2(a)(1) and 2(a)(3) and further alleged all four illicit purposes prohibited under the statute. SI at ¶ 31. In each count, Defendant is alleged to be an employee of a domestic concern and Innecco is alleged to be an agent of a domestic concern.[7] *Id.* Count Two is premised upon a May 9, 2018, international wire transfer from TC2 in Connecticut to Wertech's account in

---

[7] At oral argument, the Government opined that Innecco might also be proven to be a "person" as contemplated under subsection (a)(3). Insofar as Innecco is expressly alleged to be an agent of a domestic concern with respect to counts two, three and four, the path to a jury instruction consistent with this theory appears fraught with obstacles. It is utterly unclear how Innecco could be on both sides of the illicit transaction in a single count.

Uruguay. *Id.* Count Three is premised upon a June 12, 2018, international wire transfer by TC2 in Connecticut to Wertech's account in Uruguay. *Id.* Count Four is premised upon a September 12, 2018, email from Innecco to TC2 in Connecticut, copied to Defendant, to which Innecco attaches two invoices seeking payment for consulting fees and commissions. *Id.*

Title 18 U.S.C. § 1956(a)(2)(A) provides: "Whoever transports, transmits or transfers or attempts [to do so] a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States -- (A) with the intent to promote the carrying on of a specified unlawful activity" shall be guilty of a crime. Count Six alleges a violation of this statute, to include by aiding and abetting, in connection with the August 10, 2018, wire transfer from TC2's account in Connecticut to Wertech's account in Uruguay. SI at ¶ 36. Count Seven, similarly, alleges promotional money laundering under the statute premised upon the November 13, 2018, wire transfer from TC2's account in Connecticut to Wertech's account in Uruguay. *Id.* As to counts Six and Seven, Defendant argues that because the substantive FCPA counts fail, by necessity, no specified unlawful activity has been "promoted" and the money laundering counts fail as well.

Defendant's argument that Counts Two, Three, and Four must be dismissed is premised on an incorrect and narrow reading of the FCPA, which in turn also defeats his arguments as to Counts Six and Seven. Defendant argues that the use of the instrumentality of interstate commerce, must itself facilitate an actual bribery payment, promise to pay, or offer of payment and that because the uses relied upon in the charged counts are not alleged to have done so, and indeed are not connected in the SI to any actual bribery payment, they fail to allege a violation of the FCPA. Def.'s Mem. at 10–11. Relatedly, Defendant also asserts that the last alleged bribe paid to Berkowitz occurred

9

in 2016 and that therefore, the events relied upon in 2018 could not have been "in furtherance of" an offer, promise or payment that had already occurred. *Id.* at 14–15.

Defendant is alleged to be an employee of a domestic concern, who, with others, made use of instrumentalities of interstate commerce corruptly, in furtherance of an offer, payment, promise to pay or authorization to pay, directly or indirectly, anything of value to a foreign official for the purposes prohibited by the statute. "In furtherance of" is generally afforded a broad and encompassing reading. *See e.g., United States v. Kay,* 513 F.3d 432, 453–454 (5th Cir. 2007). In *Kay,* the defendant argued that he could only be convicted of violating the FCPA if he "used the mails or interstate commerce 'in furtherance of making the bribe itself' and not for more broad use of interstate commerce for activities that support the bribe payment." *Id.* at 453. The Fifth Circuit rejected this argument based upon the plain text of the statute and without any need to consult legislative history. *Id*. There, even though the bribes were paid in cash, in Haiti, the interstate shipment of bogus invoices from which the amount of the bribes would be calculated, was "in furtherance of" the payment. *Id.* The Court identified a "reverse causal chain" between the sending of the invoices and the subsequent cash bribes. *Id.* And although the Fifth Circuit reached its conclusion without resort to the legislative history, such a consideration supports the charges here. As set forth by the Government, a draft of the statute which, at least arguably, would have supported Defendant's narrow reading of the FCPA was rejected in favor of the broader "in furtherance of" language. Gov Opp'n at 20–21 (citing H.R. Rep. No. 95-640, at 7, 14, 18 (1977); S. Rep. No. 95-114, at 17 (1977); H.R. Conf. Rep. No. 94-831, at 12 (1977)).

Further, in the conspiracy context, whether discussing overt acts or statements of co-conspirators, "in furtherance of" is given broad meaning. *See e.g. United States v. Malka,* 602 F. Supp.3d 510, 533 (2d Cir. 2022) (What qualifies as a statement in furtherance of a conspiracy is

10

not very restrictive and is satisfied if the statement is "designed to promote or facilitate achievement of the goals of that conspiracy."); *United States v. Gupta,* 747 F.3d 111, 125 (2d Cir. 2014) ("[s]tatements designed to induce the listener's assistance with respect to the conspiracy's goals satisfy the … in-furtherance requirement"). The Court sees no basis upon which to impose the narrow reading of the FCPA urged here.

As to the argument regarding the temporal impossibility of the 2018 activity being "in furtherance of" the illicit bribes, this argument relies upon facts outside the SI. Whether the wire transfers and email were "in furtherance of" the offer, promise, or payment is for the jury to decide. *See e.g., United States v. Kozeny*, 493 F. Supp. 2d 693, 714–15 (S.D.N.Y. 2007), *aff'd,* 541 F.3d 166 (2d Cir. 2008)*,* Memorandum and Order on Reconsideration (Rejecting argument for dismissal on statute of limitation grounds that payment on behalf of foreign official could not be "in furtherance of" the bribery scheme because foreign official had already received the promised thing of value.).[8]

The FCPA substantive charges are set forth in substantial detail in the SI. Included among the allegations is that the bribery scheme was concealed through the use of shell companies and foreign bank accounts. Specifically, the allegations include that Innecco, through companies he controlled, submitted pretense invoices for "commissions" or "profit sharing" arrangements which the Defendant would cause the trading companies to pay to Innecco. SI at ¶¶ 4, 28(e). Innecco is alleged to have paid bribes with the funds received. *Id.* There is no allegation that the

---

[8] In *Kozeny,* the defendant sought dismissal of both the FCPA conspiracy charge as well as the substantive FCPA charge as untimely. He argued that the events relied upon for both charges occurred after the object of the conspiracy had been achieved and the FCPA offense completed. *Id.* In denying the motion, the Court observed that "Whether the conspiratorial agreement was in fact as broad as the Indictment alleges, whether each defendant in fact subscribed to that agreement, and if and when the conspiracy ended are issues for the jury and cannot be decided at this stage." *Id.* As to the substantive FCPA charge, the motion to dismiss was denied for substantially the same reason. *Id.* The defendant's argument as to the temporal aspects of "in furtherance of" under the FCPA appears to have been poised for consideration. However, on the eve of trial, the Government returned a superseding indictment, which eliminated the substantive FCPA charge. *United States v. Kozeny,* 664 F. Supp. 2d 369, 372 (S.D.N.Y. 2009)*.*

communications and wire transfer relied upon in Counts Two, Three and Four were directly linked to any specific payment to Berkowitz or others, but the SI does allege that these wire transfers and communications were "in furtherance of" the offer, promise or payment to foreign officials. While the precise factual basis for the allegation that the 2018 wire transfers from TC2 to Wertech or the email from Innecco to TC2 attaching invoices seeking payment of consulting fees and commissions in 2018 were "in furtherance of" the charged "offer, payment, promise to pay or authorization [to pay]" is unclear, it is sufficient at this stage of the proceedings that such is alleged.

Similarly, Counts Six and Seven, charging promotional money laundering, track the statutory language and assert that the transfer of funds from inside the United States to places outside the United States, "namely Switzerland and Uruguay"[9] were made to "promote the carrying on of … a felony violation of the FCPA." *Id.* at ¶ 36. Congress intended this statute to make criminal a broad range of transaction designed to facilitate numerous federal crimes. *United States v. Skinner,* 946 F.2d 176, 178 (2d Cir. 1991). The FCPA is among those crimes and Defendant does not argue otherwise. Because the Court has determined that the Government has sufficiently alleged a violation of the FCPA, so too has the Government sufficiently alleged promotional money laundering.

**The Conspiracy Counts are Timely (Counts One and Five)**

A motion to dismiss may be grounded in the applicable statute of limitations. *See e.g.*, *Kozeny,* 493 F. Supp. 2d at 702. Generally, statutes of limitations in criminal cases begin to run when the crime is completed. *United States v. Mercedes,* 287 F.3d 47, 54 (2d Cir. 2002). And for conspiracy offenses, "the government must 'allege and prove at least one overt act that occurred' within the statute of limitations." *Kozeny,* 493 F. Supp. 2d at 702, (quoting *United States v.*

---

[9] These counts do not rely upon any transfer of funds or monetary instruments to Switzerland, only Uruguay.

*Milstein,* 401 F.3d 53, 71 (2d Cir. 2005)). If the grand jury does not return the indictment by the last day of the statute of limitations, the indictment and the prosecution are time-barred. *Id.* Finally, "[f]oreseeable acts of one co-conspirator in furtherance of the conspiracy are attributable to all co-conspirators." *Millstein,* 401 F.3d at 72; *see also United States v. Ben Zvi,* 242 F.3d 89, 97 (2d Cir.2001) (statute of limitations depends on timely overt act by either the defendant or a co-conspirator)). Accordingly, "absent evidence that defendants ceased to be co-conspirators, which is an affirmative defense, any overt act by any of the co-conspirators in furtherance of the conspiracy within the limitations period will make the conspiracy charges timely against all defendants." *Kozeny* 493 F. Supp. 2d at 702 n. 25.

Here, the original indictment charging Defendant was returned on February 14, 2023. The parties agree that each of the offenses with which Defendant is charged is subject to a five-year statute of limitations. Accordingly, the offenses must have occurred on or after February 14, 2018.

Defendant challenges the timeliness of Counts One (FCPA conspiracy) and Count Five (money laundering conspiracy). Def.'s Mem. at 18, 22. Count One of the SI provides significant detail as to the scope, manner and means of the FCPA conspiracy between 2010 and 2016. The SI includes specifics as to the evidence on which the grand jury relied, i.e., the content of multiple emails sent between co-conspirators which purport to demonstrate how the bribery scheme was executed; dates and amounts of invoices, wire transfers and coded messages; the use of aliases when communicating and other allegations deriving from the documentary proof. *See generally* SI at ¶ 29. Beyond 2016, the allegations are fewer and less detailed. However, there are twelve (12) overt acts which are alleged to have occurred after February 14, 2018, SI ¶¶ 29(cc) through 29(nn), by either Defendant, Innecco or Gary Oztemel. Similarly, Count Five, which does not require the pleading of overt acts, alleges that the conspiracy occurred "between 2010 and 2018."

*Id.* at ¶ 33. Count Five also incorporates the allegations from Count One, to include the overt acts identified as being in furtherance of the FCPA Conspiracy. *Id.* at ¶ 32. Notably, the twelve acts which post-date February 14, 2018, are exemplary of the Count Five allegations as to the "Manner and Means" of the money laundering conspiracy. For example, Count Five includes, as part of the "Manner and Means" of the conspiracy that Defendant caused TC1 and TC2 to initiate wire transfers from their accounts in the United States to Innecco company accounts in Uruguay and Switzerland. *See id*. at ¶ 34. Paragraph 29(ee), incorporated into Count Five, alleges one such wire transfer occurring on May 9, 2018. These allegations render Count One and Count Five timely.

Nonetheless, Defendant argues that none of the timely allegations suffice insofar as they cannot be fairly characterized as "in furtherance of" the FCPA conspiracy or within the scope of the money laundering conspiracy. Def.'s Mem. at 19–20. This argument relies in part on the argument rejected above—that the SI does not adequately connect the 2018 events with bribes paid to Berkowitz for purposes of the FCPA. The argument also raises factual defenses to any claim that the post-February 14, 2018, events were within the scope of the conspiracies as charged. To take up and resolve this argument however, would require the Court look beyond the allegations and decide an issue that is ultimately for the jury. *See United States v. Benussi*, 216 F. Supp. 2d 299, 311 (S.D.N.Y. 2002), *aff'd sub nom; United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003) ("… the precise scope of [a] conspiratorial agreement [is] an issue for the jury…"); *see also United States v. Aracri*, 968 F.2d 1512, 1517 (2d Cir. 1992).[10]

The motion to dismiss is accordingly DENIED.[11]

---

[10] To the extent Defendant challenges the Government's reliance on conduct of alleged co-conspirators on the ground that the reasonable foreseeability of those acts is not apparent on the face of the superseding indictment, the Court need not reach this question. As discussed above, the Government has alleged conduct by Defendant himself within the statute of limitations.

[11] Because the Court has determined that the Conspiracy Counts are timely as charged in the SI, it need not address Defendant's argument regarding tolling via mutual legal assistance treaty ("MLAT") requests. Def.'s Mem. at 16–18.

14

**Bill of Particulars**

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the Court may direct the Government to file a bill of particulars, or a defendant may move for a bill of particulars within 14 days after arraignment or at a later time if the Court permits. A bill of particulars allows a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citing, among others, *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)). While district courts have wide discretion in deciding whether to order the Government to write a bill of particulars, "[c]ourts are only required to grant a bill of particulars 'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (S.D.N.Y. 2019) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)). "The standard turns on 'whether the information sought is necessary, not whether it is helpful,'" and showing necessity requires the defendant to show that he would be prejudiced by being denied a bill of particulars. *See id.* (quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)) (further citations omitted); *see also United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) ("The function of a bill of particulars is to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial."), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010).

Indeed, "[t]he prosecution need not particularize all of its evidence." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)). "A bill of particulars is not an investigative tool which a defendant can use to force

the government to preview its evidence or expose its legal theory." *United States v. Massino*, 605 F. Supp. 1565, 1582 (S.D.N.Y. 1985), *rev'd on other grounds*, 784 F.2d 153 (2d Cir. 1986); *see also Gottlieb*, 493 F.2d at 994 ("The government [is] not required to disclose its evidence in advance of trial."). "The court must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished." *United States v. DeFabritus*, 605 F. Supp. 1538, 1548 (S.D.N.Y. 1985).

"In exercising [its] discretion, the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000). "So long as . . . an indictment and discovery sufficiently enable defendants to avoid surprise and prepare for trial, a bill of particulars is not warranted." *United States v. Coffey*, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005).

Defendant seeks, by way of a Bill of Particulars, the identification of "the corrupt payments to foreign officials that allegedly relate to (1) the 2018 Commissions underlying the Substantive Counts and (2) the conduct within the limitations period denominated 'overt acts.'" Def.'s Mem. at 23–24. He posits that insofar as the last documented wire transfer from Innecco to Berkowitz occurred in 2016, Defendant is completely "in the dark" as to how the 2018 communications and wire transfers regarding "commissions" are connected to or are in furtherance of the charged FCPA substantive counts or conspiracy counts. *Id.* at 24–26. In response, the Government relies upon the extensive discovery provided, to include its presentation to the grand jury, as providing sufficient detail as to the nature of the crimes charged, the evidence in support of the allegations and the Government's theory of the case. Gov. Opp'n at 33–34. At oral argument, the Government further

represented that its exhibit list for trial would be forthcoming thus further eliminating the need for a bill of particulars.

As observed above, the Court agrees that the factual connection between the substantive and conspiracy charges and the events alleged to have occurred in 2018 is not obvious. And the "in furtherance of" component of both the substantive FCPA counts and the FCPA conspiracy count does appear to include a forward-looking temporal assessment in terms of the government's burden, *see, supra.* at 7–8, 11–12. That said, the SI provides extensive detail as to the structure, scope and purpose of the bribery scheme, substantively and as the object of a conspiracy. Defendant can, and has, articulated a factual defense to the charges as framed, thus undermining any claim that the charge is too vague to allow for trial preparation. And given the discovery had to date and the imminent identification of the Government's exhibit list, there appears little risk of unfair surprise at trial. This is not a RICO prosecution involving evidence as to multiple victims, only one of which is named in the indictment as was the case in *Davidoff*. Nor is this a case involving multiple transactions, only some of which are alleged to have been fraudulent as was the case in *Bortnovsky*. This case involves a multi-year overarching conspiracy to bribe foreign officials at a single state-run oil company as a means of gaining business advantages and thereby increasing business profits. The Government made clear at oral argument that, in its view, each and every payment to Innecco was part of the illegal scheme to bribe foreign officials. Documents revealing those payments have been provided in discovery. The instrumentalities of interstate or foreign commerce for each substantive count are clearly identified, by nature and date, in the SI. At this juncture, any bill of particulars would only serve to require the Government to preview its position as to how the evidence provided in discovery establishes Defendant's guilt. As discussed above, this is not a proper basis upon which to require a bill of particulars.

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss or alternatively for a bill of particulars is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of July 2024.

　　　　　　　　　　　　　　　　　　　　　　　 /s/ Kari A. Dooley　　　　　　
　　　　　　　　　　　　　　　　　　　　　　KARI A. DOOLEY
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE