# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

GLENN OZTEMEL,

*Defendant.*

No. 3:23 Cr. 26 (KAD)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GLENN OZTEMEL'S MOTION FOR A JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL**

Audrey A. Felsen
KOFFSKY & FELSEN, LLC
1261 Post Road, Suite 202B
Fairfield, CT 06824
(203) 327-1500
audrey@koffskyfelsen.com

David Patton
Matthew J. Craig
Thea Raymond-Sidel
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
dpatton@heckerfink.com
mcraig@heckerfink.com
traymond-sidel@heckerfink.com

Joshua Matz
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
(212) 763-0883
jmatz@heckerfink.com

*Counsel for Defendant Glenn Oztemel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

   I.    MOTION FOR ACQUITTAL .................................................................................. 1

      A.   Substantive FCPA Counts ................................................................................. 1

      B.   FCPA Conspiracy Count .................................................................................... 3

      C.   Money Laundering Counts ................................................................................ 4

   II.   MOTION FOR A NEW TRIAL ............................................................................... 5

      A.   Jury Charge ........................................................................................................ 5

         1.   Instructions on (a)(1), (a)(3), Aiding and Abetting, and Conspiracy Liability........... 5

         2.   Conscious Avoidance ................................................................................ 8

         3.   Statute of Limitations ............................................................................... 10

      B.   Opening Statements .......................................................................................... 11

      C.   *Giglio* Violation .............................................................................................. 12

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Branen*,
  17 F.3d 552 (2d Cir. 2004)............................................................... 6

*Brady v. Maryland*,
  373 U.S. 83 (1963)............................................................... 13, 14, 15

*Cassotto v. Donahue*,
  600 F. App'x 4 (2d Cir. 2015) ........................................................ 12

*Glossip v. Oklahoma*,
  604 U.S. --- (2025), No. 22-7466, 2025 WL 594736 (U.S. Feb. 25, 2025) ................. 14, 14

*Leka v. Portuondo*,
  257 F.3d 89 (2d Cir. 2001)............................................................... 15

*Mathis v. United States*,
  579 U.S. 500 (2016)..................................................................... 7

*McDonnell v. United States*,
  579 U.S. 550 (2016)................................................................... 7, 8

*Pennsylvania v. Ritchie*,
  480 U.S. 39 (1987)..................................................................... 14

*Penry v. Johnson*,
  532 U.S. 782 (2001)................................................................... 10

*United States v. Avellino*,
  136 F.3d 249 (2d Cir. 1998)..........................................................144

*United States v. Bahadar*,
  No. 90 Cr. 343, 1990 WL 110913 (E.D.N.Y. July 31, 1990) ............................ 9

*United States v. Bell*,
  No. 8 Cr. 13, 2008 WL 11348276 (D. Conn. Oct. 23, 2008) ............................ 6

*United States v. Bin Laden*,
  397 F. Supp. 2d 465 (S.D.N.Y. 2005).................................................. 14

*United States v. Coppa*,
  267 F.3d 132 (2001)................................................................... 15

*United States v. Delva*,
  No. 12 Cr. 802, 2015 WL 629375 (S.D.N.Y. Feb. 13, 2015)............................. 12

*United States v. Esso*,
    684 F.3d 347 (2d Cir. 2012)..................................................................................... 12

*United States v. Ferguson*,
    246 F.3d 129 (2d Cir. 2001)..................................................................................... 13

*United States v. Flom*,
    256 F. Supp. 3d 253 (E.D.N.Y. 2017) ..................................................................... 12

*United States v. Full Play Group, S.A.*,
    No. 15 Cr. 252, 2023 WL 1994196 (E.D.N.Y. Feb. 13, 2023).......................... 15

*United States v. Gil*,
    297 F.3d 93 (2d Cir. 2002)........................................................................................ 15

*United States v. Gonzalez*,
    No. 6 Cr. 726, 2008 WL 3914877 (S.D.N.Y. Aug. 26, 2008) ............................. 2

*United States v. Grimm*,
    738 F.3d 498 (2d Cir. 2013)....................................................................................... 4

*United States v. Grote*,
    961 F.3d 105 (2d Cir. 2020)....................................................................................... 8

*United States v. Hoskins*,
    902 F.3d 69 (2d Cir. 2018)......................................................................................... 6

*United States v. Hoskins*,
    44 F.4th 140 (2d Cir. 2022) ................................................................................. 6, 8

*United States v. Hunter*,
    32 F.4th 22 (2d Cir. 2022) ...................................................................................... 14

*United States v. Khalupsky*,
    5 F.4th 279 (2d Cir. 2021) ........................................................................................ 8

*United States v. Klein*,
    216 F. App'x 84 (2d Cir. 2007) ............................................................................... 9

*United States v. Kopstein*,
    759 F.3d 168 (2d Cir. 2014)....................................................................................... 7

*United States v. Kozeny*,
    638 F. Supp. 2d 348 (S.D.N.Y. 2009)..................................................................... 11

*United States v. Landesman*,
    17 F.4th 298 (2d Cir. 2021) ...................................................................................... 3

iii

*United States v. Lauria,*
    70 F.4th 106 (2d Cir. 2023) ................................................................................... 11

*United States v. Madori,*
    419 F.3d 159 (2d Cir. 2005) ................................................................................... 14

*United States v. Napout,*
    332 F. Supp. 3d 533 (E.D.N.Y. 2018) .................................................................. 14

*United States v. Rodriguez,*
    496 F.3d 221 (2d Cir. 2007) ................................................................................... 13

*United States v. Salovitz,*
    701 F.2d 17 (2d Cir. 1983) ..................................................................................... 12

*United States v. Silver,*
    864 F.3d 102 (2d Cir. 2017) ..................................................................................... 8

*United States v. Silver,*
    948 F.3d 538 (2d Cir. 2020) ..................................................................................... 4

*United States v. Spencer,*
    4 F.3d 115 (2d Cir. 1993) ....................................................................................... 14

*United States v. Stergo,*
    No. 23 Cr. 20, 2023 WL 3451381 (S.D.N.Y. May 15, 2023) ............................. 13

*United States v. Yakobowicz,*
    427 F.3d 144 (2d Cir. 2005) ................................................................................... 12

**STATUTES**

15 U.S.C. § 78dd-2 ......................................................................................... 2, 7, 7

**RULES**

Fed. R. Crim. P. 30 ............................................................................................... 8

## PRELIMINARY STATEMENT

The government's opposition puts the weakness of its case against Defendant Glenn Oztemel on full display. Without any payment from Freepoint to Rodrigo Berkowitz in 2018 to support the FCPA and money laundering charges, the government relies on stale evidence from 2011 and 2012 to bring this case within the statute of limitations. And instead of truly grappling with the manifest errors at trial, the government offers a series of neither-here-nor-there claims— opining on FCPA theories hypothetically available under the statute (where the jury instruction error concerns a failure to distinguish among the actual theories put to the jury), insisting that the government had no obligation to record exculpatory information (where Oztemel asserts a violation of *Giglio* for failing to disclose exculpatory evidence, not a violation of the Jencks Act), among many others.

To the defense's knowledge, this is the only FCPA action brought to trial that has failed to tie substantive violations to actual bribes, and it reflects the government's most aggressive effort to defend jury instructions that would permit a conviction for conduct that the law does not make a crime. The government, in other words, has used Oztemel to work a breathtaking expansion of the FCPA. This Court need not wait for the Second Circuit to return the statute to its proper bounds. The Court should grant a judgment of acquittal or, in the alternative, a new trial.

## ARGUMENT

### I.    MOTION FOR ACQUITTAL

#### A.    Substantive FCPA Counts

The government concedes that there was no payment to Berkowitz in connection with the 2018 wires or at any other time after August 2016, but insists that the evidence was sufficient on the theory that two wire transfers to Innecco and an emailed invoice were in furtherance of earlier promises or offers to pay bribes. ECF 394 ("Opp.") at 19 & n.9. Although the government avoids

1

specifying when the promises allegedly underpinning the 2018 substantive violations were made, or even what those promises were, it elsewhere argues that "once the scheme was in motion, there was simply no need for Glenn Oztemel to make an explicit, additional promise of bribes on every single trade; their corrupt agreement had already been made and was acted upon and renewed, over and over again, from the day they first reached it in October 2011." *Id.* at 16.

But an "offer, payment, or promise to pay" is a required element of each substantive FCPA violation, 15 U.S.C. § 78dd-2(a), and a "promise"[1] in 2011 is simply not sufficient to support three separate FCPA violations that allegedly occurred in 2018. If it were, the implications would be breathtaking: every single email exchanged between Innecco and Oztemel in the seven-year period after 2011 (all reflecting use of interstate wires in vague furtherance of the alleged scheme) would be transformed into separate substantive FCPA violations. But the statute—and the statute of limitations—require more. *See* ECF 379-1 ("Mot.") at 13–16; *United States v. Gonzalez*, No. 6 Cr. 726, 2008 WL 3914877, at *4 (S.D.N.Y. Aug. 26, 2008) (violation of a non-continuing offense was time-barred "with respect to all conduct alleged prior to" the limitations cutoff).

The government's efforts to remedy this deficiency fall short. The government makes much of the fact that Berkowitz, after testifying to each of the trades between Petrobras and Freepoint in 2018, insisted that he was working for bribes. Opp. 23–24. But Berkowitz's subjective hope that he might get paid someday does not add anything to the government's proof that Oztemel himself was acting in furtherance of a promise to pay.

The government also points to communications in which Berkowitz shared Petrobras information with Innecco, and communications in which Innecco shared that information with

---

[1] Berkowitz did not even testify to a clear promise by Oztemel to pay bribes in 2011. All Berkowitz testified was that, in response to pressure from Berkowitz's colleague, Oztemel said he was "only interested in touching Petrobras oil." Tr. Day 4 AM at 35. Even taking Berkowitz's testimony at face value, this was not a promise to pay a particular bribe or a promise to pay any bribe at all, let alone a promise to pay a bribe seven years later.

Oztemel. *See* Opp. 19–20. But there was substantial evidence at trial—that the government does not acknowledge, let alone confront—that agents routinely provide traders with precisely the type of information that Innecco relayed to Oztemel. Mot. 6–7. The mere fact that such information was exchanged is not proof beyond a reasonable doubt that payments from Freepoint were in furtherance of an illicit bribe.

Finally, the government points to a handful of strange emails sent from Innecco to Oztemel over many years. Opp. 15–16. But the government's brief is careful to leave out any information about when those emails were received, and whether there is any evidence that Oztemel responded to—or even read—them. But closer examination reveals that all eleven emails the government cites were sent prior to the limitations period, with nearly half sent between 2010 and 2012. *Id.* at 15 (GX 5009, GX 5393, GX 5392, GX 5218, GX 5276). Oztemel simply didn't respond to more than half of the emails, leaving the jury without any evidence that Oztemel even opened the email in question. *See id.* (GX 5009, GX 5218, GX 5276, GX 7055, GX 6020, GX 6049). And in the few instances where Oztemel *did* respond, he is expressing confusion, *see id.* (GX 5393, GX 5392); joking, *see id.* (GX 5965); or admonishing Innecco's behavior, *see id.* at 15–16 (GX 5793, GX 6395). *See also* Mot. 10. Even if those emails were potentially suspect, they were sent long before the limitations period and are simply too thin a reed on which to hang the 2018 FCPA charges. *See United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021).

## B.    FCPA Conspiracy Count

The government's arguments as to the FCPA conspiracy fail for many of the same reasons as its arguments as to the substantive FCPA counts: insufficient proof that the conspiracy continued into the limitations period. *See also* Mot. 17–19.

The government offers no response to the argument that payments to Innecco within the limitations period were proof of only "a lengthy, indefinite series of ordinary, typically

noncriminal, unilateral actions," coupled with "no evidence that" a "conspiracy [was] still taking place." *United States v. Grimm*, 738 F.3d 498, 502 (2d Cir. 2013); *see also* Mot. 17. Oztemel's firm paid Innecco pursuant to an industry-standard agreement, and Innecco passed information to Oztemel and his colleagues that was within industry standards as well. Mot. 6–7. By failing to respond to this argument, the government effectively concedes that there was no "corrupt intervention" as necessary to establish that any conspiracy continued into the limitations period. *United States v. Silver*, 948 F.3d 538, 573–74 (2d Cir. 2020).

The government instead hangs its defense of the verdict on the testimony of its key witness, arguing that "Berkowitz's testimony alone is sufficient to sustain the conviction,"[2] and that the defense is asking the Court to reassess Berkowitz's credibility for itself. Opp. 14. Not so. As detailed above, the so-called "promise" Berkowitz testified to occurred in 2011, and his subjective belief in 2018 that he would someday receive bribes is simply not enough to establish that a conspiracy between Oztemel and Innecco (but, to be clear, not Berkowitz, *see* ECF 306 at 22) continued into the limitations period.[3]

### C.    Money Laundering Counts

The government's proof on the money laundering counts comes up short for similar reasons. Just as there is insufficient evidence for a rational trier of fact to conclude that any FCPA violations or conspiracy continued into the limitations period, there is insufficient evidence of any connection between the 2018 wires and any violation of the FCPA or similar Brazilian anti-

---

[2] The government argued the opposite during its rebuttal argument at trial, telling the jury: "Ladies and gentlemen, Rodrigo Berkowitz was one witness of many…. I would suggest to you that the e-mails that came in through Agent Marasco tell you what you need to know about this case." Tr. Day 15 at 79.

[3] The government argues that trial counsel conceded that each "transaction" in 2017 and 2018 was an act "in furtherance" of the scheme. Opp. 5 n.2. Trial counsel did no such thing. Counsel allowed only that Berkowitz had testified that he was "giving the information[] so Freepoint could win" because he expected to receive bribes if they did so—not that any bribe was actually promised or paid. Tr. Day 4 AM at 100.

corruption law, as well as insufficient evidence that the money laundering conspiracy continued beyond August 2017. *See also* Mot. 19–21.

## II.    MOTION FOR A NEW TRIAL

### A.    Jury Charge

#### 1.    Instructions on (a)(1), (a)(3), Aiding and Abetting, and Conspiracy Liability

Most of the government's arguments on the substantive FCPA instructions do not actually address the errors detailed in Oztemel's motion. The government's principal response is to insist that an "agent of a domestic concern" can also be an "any person" intermediary for purposes of (a)(3). *See* Opp. 26–30, 34–36. To the extent the government argues that a person could fill both roles simultaneously—that is, could make a payment to themselves in violation of the FCPA— there is absolutely no legal basis for that position, as the Court previously recognized and the government previously agreed. Charging Conf. I at 13; Mot. 23. To the extent the government merely argues that a person could theoretically be either an agent of a domestic concern or an intermediary through whom an agent might act, that is an answer to a question no one has asked. The issue here is not what is theoretically possible, depending on the evidence and the way the case is presented to the jury. The issue is that the government's eleventh-hour pivot to (a)(3) resulted in a mix of instructions relating to (a)(1), (a)(3), aiding and abetting, and conspiracy liability, with no delineation among the government's theories and no guidance to the jury on what was necessary to convict on any given one. *See* Mot. 24–26.

Tellingly, the government does not even attempt to explain how the jury could have made its way through these instructions to a legally sound verdict. In fact, it engages in the very picking-and-choosing that the instructions impermissibly allowed. For instance, the government takes the position that Innecco was an agent of a domestic concern, Opp. 29 n.14, but then argues that the

Court was right to instruct that this element was "satisfied" for all its theories by Oztemel alone, *id.* at 34. The government does not acknowledge that the jury was never instructed on how to determine whether Innecco was an agent for purposes of the FCPA, and fails to grapple with Second Circuit precedent requiring such a determination to convict on any theory of secondary liability. *See* Mot. 25–26 (discussing *United States v. Hoskins* ("*Hoskins I*"), 902 F.3d 69, 83–85 (2d Cir. 2018), and *United States v. Hoskins* ("*Hoskins II*"), 44 F.4th 140, 150–52 (2d Cir. 2022)). Likewise, the government insists that there was no issue in charging aiding-and-abetting or conspiracy liability in connection with (a)(3) because "Innecco could [] be both an agent of a domestic concern" and an "any person" intermediary. Opp. 36. The problem, again, is that he couldn't be both simultaneously. If Innecco were the intermediary as envisioned by the government's (a)(3) theory, he could not be the agent of a domestic concern, and if Innecco were not the agent of a domestic concern, there was no other principal whom Oztemel could have aided and abetted or with whom Oztemel could have conspired. Tr. Charging Conf. I at 23–24 (government conceding that Innecco was only other possible principal); Mot. 25.[4]

The government's other overarching response is to argue that the jury was properly charged because particular words of the instructions track the language of the FCPA. Opp. 30–33. This, too, speaks past the errors here. Jury instructions must "adequately inform the jury on the law," *United States v. Bell*, No. 8 Cr. 13, 2008 WL 11348276, at *5 (D. Conn. Oct. 23, 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 2004)), and cannot be so confusing that they create the possibility that they "have convicted [a defendant] for conduct that is not unlawful."

---

[4] The instructions in the other FCPA cases cited by the government, Opp. 31 n.18, underscore the problems with the instructions here. In each of those cases, the jury was told how to determine whether a person is a domestic concern or an agent thereof. *See* ECF 231-2 at 13–14; ECF 231-3 at 138–40; ECF 231-5 at 54–56, 109. And in *United States v. Aguilar*, No. 20 Cr. 390 (E.D.N.Y.), the court instructed the jury that it must be unanimous as to which party was the domestic concern, ECF 231-3 at 140—an instruction that should have been given here in light of the different roles that Oztemel and Innecco would have played under the government's various theories.

*McDonnell v. United States*, 579 U.S. 550, 579 (2016). Even if aspects of the charge in isolation tracked the statutory language, the errors here resulted from the "entire jury charge," which impermissibly mixed and matched elements from the government's various theories of liability and permitted the jury to convict without making all the findings necessary for a single theory. *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014).

The government's remaining arguments do nothing to salvage the instructions.

*First*, the government argues that the explicit instruction that the FCPA substantive counts "charge violations … under 15 U.S.C. § 78dd-2(a)(1)," ECF 306 at 11–12, may be excused because the instruction must be considered in the context of the entire charge. Opp. 33–34. But that is exactly what Oztemel has done, explaining how the explicit instruction on (a)(1) was irreconcilable with the remainder of the instructions, Mot. 24–25, and identifying a series of ways in which the amalgam of instructions "authorized a guilty verdict despite a failure of proof on any single theory of liability," *id.* at 24.

*Second*, the government argues that a unanimity instruction was not required because (a)(1) and (a)(3) represent different "means" to violate the FCPA, rather than different elements of different FCPA charges. Opp. 37. The government's comparison to *Mathis*, and its hypothetical "deadly weapon" statute, exemplifies the differences between means and elements. *Mathis v. United States*, 579 U.S. 500, 506 (2016). It's not as if the parties disagree about whether a promise to pay a bribe was offered in an email, spoken in a meeting, or communicated by phone, just as a deadly weapon could be a "knife, gun, bat, or similar weapon." *Id.* Rather, (a)(1) and (a)(3) are different both in their *actus reus* (giving the "thing of value" to a foreign official versus to an intermediary) and *mens rea* (only (a)(3) requiring knowledge that the "thing of value" will be promised or paid to a foreign official). *See* 15 U.S.C. § 78dd-2(a). That is why the parties and the

Court consistently discussed the different "elements" of the two statutory provisions. *E.g.*, Tr. Day 7 AM at 5; Tr. Day 15 at 21, 40, 42–43; ECF 306 at 13.

*Finally*, the government argues that any error is harmless because "evidence abounded of Glenn Oztemel's use of interstate commerce in furtherance of the scheme—both by Glenn Oztemel directly and through his agent, Innecco." Opp. 35. But the standard is not whether the jury could have convicted on a theory that was consistent with the jury instructions and the government's proof at trial. Because the instructions permitted the jury to "convict [Oztemel] of conduct that is not unlawful," the error was not "harmless beyond a reasonable doubt." *McDonnell*, 579 U.S. at 580–81; *see also United States v. Silver*, 864 F.3d 102, 119 (2d Cir. 2017).[5]

### 2.    Conscious Avoidance

The government does not argue that the conscious avoidance instruction correctly stated the law. *See* Opp. 38–41. Nor could it. *See* Mot. 27 (discussing *United States v. Khalupsky*, 5 F.4th 279 (2d Cir. 2021)). Instead, the government argues that Oztemel did not preserve the error; other instructions somehow made up for the error; and the error was harmless. Each argument fails.

"In order to be preserved, an objection to the jury instructions must be made by 'inform[ing] the court of the specific objection and the grounds for the objection before the jury retires to deliberate.'" *United States v. Grote*, 961 F.3d 105, 114 (2d Cir. 2020) (quoting Fed. R. Crim. P. 30(d)). Immediately after the jury was charged, the Court requested to hear objections, and Oztemel objected to the conscious avoidance instruction for the same reasons he does here.

---

[5] It is not enough that certain witnesses and attorneys colloquially referred to Innecco as Freepoint's "agent." Opp. 35 & n.22. *Hoskins I*—the most relevant case on the issue, which the government relegates to a footnote, *see* Opp. 36 n.24—confirms that whether a person is an "agent of a domestic concern" is an element of the statute that must be charged and proven. 902 F.3d at 85; *see also Hoskins II*, 44 F.4th at 150–52. In fact, there is debate over exactly what the government must show to prove agency for purposes of the FCPA. *See Hoskins II*, 44 F.4th at 150 & n.2. The government does not address this issue in its brief, and the jury was never asked to make the finding necessary to convict Oztemel for aiding and abetting or conspiring with Innecco.

Tr. Day 14 at 86–87; Mot. 27–28. That is all the law required.[6] That Oztemel's trial counsel had previously acceded to a proposal to place the conscious avoidance instruction in the conspiracy section does not implicate the "invited error" doctrine. Opp. 39. That doctrine bars claims of error where the allegedly erroneous instruction was proposed by the objecting party. *See United States v. Klein*, 216 F. App'x 84, 90 (2d Cir. 2007). Oztemel did not propose the conscious avoidance instruction that was given to the jury; in fact, he proposed language that would have addressed the error. ECF 233 at 19 ("Conscious avoidance cannot be used as a substitute for finding that the Defendant knowingly and intentionally joined the conspiracy in the first place."). And the discussion at the charging conference that the government cites (at Opp. 38–39) concerned only whether to place the instruction in the conspiracy section (which is not categorically improper because conscious avoidance does apply to knowledge of a conspiracy's aims), not whether the instruction should also apply to knowing participation in the conspiracy (which it categorically does not). Charging Conf. I at 17–19; Charging Conf. II at 5.

The government fares no better in arguing that the jury convicted Oztemel based on other parts of the instructions, rather than the conscious avoidance language that was the focus of the conspiracy instructions. The government points to various instructions stating that knowledge and willfulness are part of a conspiracy charge, *see* Opp. 39–40 (quoting ECF 306 at 23, 25–26), but those instructions did not define the type of knowledge required—the erroneous conscious avoidance instruction did, *see* ECF 306 at 26. The government next block quotes a paragraph that reiterates that knowledge is required, *see* Opp. 40 (quoting ECF 306 at 27), but that paragraph simply carries forward the erroneous definition of knowledge given to the jury moments before,

---

[6] The government's single case on this point, *see* Opp. 39, does not say differently. In *United States v. Bahadar*, while the district court perhaps thought that an objection made after the delivery of the jury charge was late, the court did not hold that the error was unpreserved and instead resolved the issue on the merits. No. 90 Cr. 343, 1990 WL 110913, at *5 & n.6 (E.D.N.Y. July 31, 1990).

*see* ECF 306 at 26–27. Finally, the government highlights other instructions regarding knowledge, intent, and willfulness—which came more than fifteen pages before the conscious avoidance instruction, *see* Opp. 40–41 (quoting ECF 306 at 9–10)—but offers no explanation for why the jury would rely on those general definitions over the specific, erroneous knowledge definition given in the "Membership in the Conspiracy" section. *See* Mot. 28–29. At most, those other instructions "made the jury charge as a whole internally contradictory, and placed law-abiding jurors in an impossible situation." *Penry v. Johnson*, 532 U.S. 782, 799 (2001).

Finally, the government did not abandon its conscious avoidance theory in summation and thus render the instruction error "besides the point." Opp. 41. The government asked the jury to consider "all the ways you know the Defendant was in on it" and went on to highlight evidence that could fit its conscious avoidance theory (*e.g.*, allegedly suspicious emails coupled with an incentive to look the other way). Tr. Day 15 at 37. To make that argument in anticipation of a conspiracy instruction that focused exclusively on conscious avoidance hardly evidences the abandonment of that theory and does nothing to render the error harmless. *See also* Mot. 29.

### 3.    Statute of Limitations

In trying to defend the statute of limitations instruction (or, in the case of the money laundering conspiracy charge, the lack thereof), the government glosses over the leading instruction referencing any sort of date limitation, which explicitly stated that "it is not necessary for the Government to prove that the conspiracies charged in Count One and Count Five lasted throughout the entire periods charged"—2010 to 2018—"only that they existed for some time within those time periods." ECF 306 at 9. This gave the jury ample reason to believe that finding a conspiracy based on conduct between, say, 2010 and 2012 was sufficient. And the instructions further fueled that mistaken belief by citing overt acts going back to 2010, making clear that "one overt act" was sufficient for purposes of the FCPA, and emphasizing that the jury "need not reach

unanimous agreement" on that overt act. *Id.* at 28–31. While the government argues that using "act" instead of "overt act" may not, in isolation, have been problematic, or that including twenty pre-limitations period overt acts technically tracks the indictment, the government never considers whether the relevant instructions "as a whole … adequately [informed the jury] of the law." *United States v. Lauria*, 70 F.4th 106, 132 (2d Cir. 2023). They did not, and the error was plain and prejudicial for the reasons already explained. *See* Mot. 30–31 & n.2.[7]

As to the money laundering conspiracy, the government's effort to justify the total absence of any statute of limitations instruction gets the defense's argument backwards. The defense does not argue that Oztemel withdrew from the conspiracy, or that a withdrawal instruction should have been given. Opp. 46. Rather, the government must prove—in a money laundering conspiracy as in any other—that the conspiracy continued into the limitations period, *United States v. Kozeny*, 638 F. Supp. 2d 348, 353 n.43 (S.D.N.Y. 2009), lest the five-year statute of limitations mean nothing at all, *see* Mot. 31. The jury did not make such a determination here.

## B.    Opening Statements

The government's lead response to the imbalance between the parties' opening statements is to insist that Oztemel consented. Opp. 47–48. That couldn't be further from the truth. At the pretrial conference, the defense repeatedly objected to the limitations that the Court imposed. *See* ECF 245 at 37–49, 70–71. Although the defense ultimately gave an opening statement that complied with Court's limitations—rather than give up the opportunity to make an opening statement entirely, as the government implies the defense should have done, Opp. 48—doing so did not waive the objections that Oztemel repeatedly lodged. *See* Wright & Miller, Fed. Prac. &

---

[7] The jury's convictions on the substantive FCPA counts do not save the government's erroneous instruction on the FCPA conspiracy, *see* Opp. 44, as the jury instructions did not allow the jury to properly convict Oztemel of the substantive FCPA charges either, *supra* at 5–8.

Proc. § 5039.2 (2d ed.) (invited error doctrine "does not apply where party, after appropriate objections, acquiesces in court's ruling"); *cf. Cassotto v. Donahue*, 600 F. App'x 4, 6 (2d Cir. 2015) (doctrine does not apply when defendant acquiesced to a standard that the district court was bound to apply).

The remainder of the government's response seeks to downplay the imbalance detailed in Oztemel's motion on the view that "defense counsel repeatedly used the Superseding Indictment" in his opening statement and the government made no "arguments" in its own. Opp. 50. But Oztemel is not claiming that only the government was allowed to reference the indictment or that the defense should have been allowed to engage in advocacy before trial began. The lengthy indictment here was a "one-sided presentation of the prosecution's view of the case." *United States v. Esso*, 684 F.3d 347, 351–52 & n.5 (2d Cir. 2012). Because the government was permitted to marshal the indictment in its favor, the defense, too, should have been allowed to set "expectations as to what the evidence will show," *United States v. Yakobowicz*, 427 F.3d 144, 150 (2d Cir. 2005), and provide an "outline of [its] proposed proof," *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983). It was an error when the defense was not permitted to do so. The instruction to the jury that "opening statements are not evidence," Opp. 50, does not render the error harmless for the reasons set forth in Oztemel's brief, *see* Mot. 35–36, and ignored in the government's.

## C.    *Giglio* Violation

The government takes pains to distance itself from the *Giglio* violation raised in Oztemel's motion. It first argues that *Giglio* is inappropriate to raise here because the parties briefed a related motion for a mistrial during trial. Opp. 6–8, 25, 51–52. But the government's authorities all involve circumstances where issues were raised, briefed, and decided *pretrial*. *See United States v. Flom*, 256 F. Supp. 3d 253, 271 (E.D.N.Y. 2017) (faulting defense for "us[ing] Rule 33 as a vehicle to relitigate pretrial rulings with which [it] disagrees"); *United States v. Delva*, No. 12 Cr. 802, 2015

WL 629375, at *4 (S.D.N.Y. Feb. 13, 2015) (defense cannot use Rule 33 to relitigate a pretrial motion to suppress). A Rule 33 motion, by definition, addresses issues arising during trial, and the defense's decision to file a mistrial motion does not limit the defense's right to argue that a *Giglio* violation revealed during trial contributes to the "manifest injustice" that would result from letting the guilty verdict stand. *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (when deciding a Rule 33 motion, "[t]he district court must examine the entire case, tak[ing] into account all facts and circumstances").

The government next tries to make the issue about the Jencks Act, highlighting the Court's prior observation that "the law is clear that the Government is under no obligation to memorialize everything a witness says and produce it to the Defense." Opp. 53. But that only confirms the misunderstanding (or disregard) of *Brady*/*Giglio* that the government has exhibited throughout this case. *See* Mot. 3. It does not matter to the *Giglio* analysis whether Agent Lundby recorded the alleged discussion of bribes in the relevant 302, or whether the "alleged omission"[8] was a "prior statement" for purposes of the Jencks Act. Opp. 52–53. What matters for *Giglio* is whether the government possessed the information that it failed to disclose. *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007); *United States v. Stergo*, No. 23 Cr. 20, 2023 WL 3451381, at *4 (S.D.N.Y. May 15, 2023) (where the government's "*Brady/Giglio* obligations (requiring production of material exculpatory and impeachment evidence) collide with its obligations under the Jencks Act … , the government's *Brady* obligations take precedence"). The government certainly failed to do so here. Mot. 37.

The government fares no better when it gets to the substance of the *Giglio* analysis.

---

[8] The omission is hardly "alleged." Berkowitz testified on direct examination to discussing bribes at the Rio meeting, the government knew that he would do so, but that key detail was conspicuously missing from the relevant 302 and Agent Lundby's notes. *See* Mot. 36–37.

*First*, the government argues that Berkowitz's account of the Rio meeting was inculpatory. Opp. 52. But the government does not engage with any of the authorities or reasoning in Oztemel's motion explaining why evidence illustrating Berkowitz's evolving testimony over time, culminating with a key change that spoke to a statute of limitations issue in the government's case, constitutes *Giglio* impeachment evidence. *See* Mot. 37–39.[9]

*Second*, the government argues that the undisclosed information was not material, blithely asserting that "[i]mpeachment information is 'only rarely' material." Opp. 25.[10] That claim does not reflect the law, as the Supreme Court made clear just last week. *See Glossip v. Oklahoma*, 604 U.S. --- (2025), No. 22-7466, 2025 WL 594736, at *11 (U.S. Feb. 25, 2025) ("Evidence can be material even if it goes only to the credibility of the witness." (internal quotation marks omitted)). The standard for materiality under both *Brady* and *Giglio* is whether "*there is a reasonable probability that*, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005) (emphasis added) (citation omitted). The government's brief omits the italicized language when quoting *Madori*, thereby reporting a much more favorable standard for its side than the caselaw actually provides. Opp. 54. Applying the correct standard, it is certainly the case that Berkowitz's belated claim of having discussed bribes in Rio had "the potential to alter the jury's assessment" of his testimony. *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir. 1998).[11]

---

[9] This case bears little resemblance to *United States v. Napout*, 332 F. Supp. 3d 533 (E.D.N.Y. 2018). *See* Opp. 52 n.30. There, the information in question *was disclosed* prior to trial, and there was no argument that the cooperating witness had progressively embellished his account such that a later, seemingly inculpatory statement could be used to impeach. *Napout*, 332 F. Supp. 3d at 562-63.

[10] The government quotes *United States v. Bin Laden*, 397 F. Supp. 2d 465, 514 (S.D.N.Y. 2005), which in turn cites *United States v. Spencer*, 4 F.3d 115, 119 (2d Cir. 1993), for this proposition. But *Spencer* addressed a motion for a new trial on the basis of newly discovered evidence after trial—not a motion based on a *Giglio* violation revealed mid-trial—and, in any case, *Spencer* never asserts that impeachment evidence is "rarely" material. *Id.*

[11] The government also argues that other impeachment evidence—Berkowitz's receipt of bribes, lies to Brazilian law enforcement, and use of prostitutes—rendered the undisclosed evidence about the Rio meeting cumulative and thus immaterial. Opp. 54 n.32. But the undisclosed evidence did not "merely furnish[] an additional basis on which to

*Third*, the government argues that the opportunity to cross-examine Berkowitz and the opportunity to call Agent Lundby alleviated the prejudice from the government's nondisclosure. Opp. 53–54. But the government concedes that *Giglio* material "must be disclosed in time for its effective use at trial." *Id.* at 54 (quoting *United States v. Coppa*, 267 F.3d 132, 142 (2001)). And disclosure of impeachment evidence during the direct testimony of the witness who is to be impeached is patently insufficient. *See Leka v. Portuondo*, 257 F.3d 89, 101–03 (2d Cir. 2001) (defense prejudiced when it received *Brady* material nine days before trial began); *United States v. Gil*, 297 F.3d 93, 106–07 (2d Cir. 2002) (same as to disclosure the Friday before a Monday trial). That the limited cross-examination of Berkowitz that the defense was able to pursue on this point "did not bear fruit," Opp. 52, only illustrates the prejudice of the government's nondisclosure—and certainly does not excuse it.[12]

## CONCLUSION

For the reasons above and in Oztemel's opening brief, the Court should enter a judgment of acquittal on all counts or, in the alternative, order a new trial.

---

[12] impeach." *United States v. Hunter*, 32 F.4th 22, 34 (2d Cir. 2022). The other evidence might have shown Berkowitz's general character for untruthfulness, but critically did not show that Berkowitz had evolved his account over a five-year period to tell prosecutors what they wanted to hear about Oztemel. *See* Mot. 37–38; *Glossip*, 2025 WL 594736, at *12.

[12] The government's reliance (at Opp. 53–54 & n.31) on *United States v. Full Play Group, S.A.*, No. 15 Cr. 252, 2023 WL 1994196 (E.D.N.Y. Feb. 13, 2023), is misplaced. Whereas the court there found nothing "indicating or even suggesting that the Government possessed [certain] information before trial," *id.* at *7, the government here solicited the information it had failed to disclose and then tried to explain away its nondisclosure by stating that it was "not aware" that the information "was not in the 302s." Mot. 37. As to other undisclosed information in *Full Play Group*, the court found no *Giglio* violation because the government had already disclosed that "there were conversations in Los Angeles and New York City regarding bribes," and what came out at trial were simply additional inculpatory "details." 2023 WL 1994196 at *4, 8–9 (internal quotation marks omitted). That is far from the situation here. *See* Mot. 38.

Dated:  New York, New York
        March 7, 2025

Audrey A. Felsen
KOFFSKY & FELSEN, LLC
1261 Post Road, Suite 202B
Fairfield, CT 06824
(203) 327-1500
audrey@koffskyfelsen.com

Respectfully submitted,

David Patton*
Matthew J. Craig*
Thea Raymond-Sidel*
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
dpatton@heckerfink.com
mcraig@heckerfink.com
traymond-sidel@heckerfink.com

Joshua Matz*
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
(212) 763-0883
jmatz@heckerfink.com

* admitted *pro hac vice*

*Counsel for Defendant Glenn Oztemel*

16