UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:23-cr-00026 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| GLENN OZTEMEL | ) | |
| | ) | |
| | ) | AUGUST 11, 2025 |

<u>MEMORANDUM OF DECISION</u>
**RE: MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A
NEW TRIAL (ECF NO. 379)**

Kari A. Dooley, United States District Judge:

Following a jury trial, Defendant Glenn Oztemel ("Defendant" or "Oztemel") was found

guilty of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") 15 U.S.C. § 78dd-1, *et*

*seq*, in violation of 18 U.S.C. § 371 (Count One); three substantive violations of the FCPA, in

violation of 15 U.S.C. § 78dd-2 and 18 U.S.C. § 2 (Counts Two, Three, and Four); conspiracy to

engage in international promotional money laundering in violation of 18 U.S.C. § 1956(h) (Count

Five); and two counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2

(Counts Six and Seven).

Pending before the Court is Defendant's post-trial motion for judgment of acquittal or, in

the alternative, a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure.

The Government opposes the motion. For the reasons that follow, Defendant's motion is DENIED.

**Procedural History**

On February 14, 2022, a federal grand jury returned a seven-count Indictment charging

Defendant[1] with violating the Foreign Corrupt Practices Act, engaging in international

promotional money laundering, and related conspiracies. On August 29, 2023, the grand jury

---

[1] Co-Defendant Eduardo Innecco was also indicted. He is presently in France awaiting extradition proceedings.

returned a Superseding Indictment (the "SI") against Defendant and others.[2] Defendant was charged as follows:

- Count One, conspiracy to violate the FCPA, 15 U.S.C. § 78dd-1, *et seq*, for his alleged involvement in a scheme to bribe officials of the Brazilian state-owned oil and gas company, Petroleo Brasileriro S.A. ("Petrobras") in exchange for confidential information, in violation of 18 U.S.C. § 371;

- Count Two, violation of the FCPA, 15 U.S.C. § 78dd-2, based upon a wire transfer from Freepoint Commodities, LLC ("Freepoint") to Wertech (a company controlled by a co-defendant) on May 9, 2018;

- Count Three, a violation of the FCPA, 15 U.S.C. § 78dd-2, based upon a wire transfer from Freepoint to Wertech on June 12, 2018;

- Count Four, a violation of the FCPA, 15 U.S.C. § 78dd-2, based upon an email from co-defendant Innecco to a Freepoint employee, on which Defendant was copied, seeking payment of a consultancy fee and commission;

- Count Five, money laundering conspiracy in violation of 18 U.S.C. § 1956(h), based upon an alleged agreement to transport, transmit, and transfer monetary instruments and funds from a place in the United States to a place outside the United States with the intent to promote a felony, specifically, violations of the FCPA and violations of the Brazilian Penal Code;

---

[2] Co-Defendant Gary Oztemel, Defendant's brother, was added as a defendant. Gary Oztemel pled guilty to Count Nine of the superseding indictment on June 24, 2024. Co-Defendant Eduardo Innecco is the subject of extradition proceedings in France.

- Count Six, money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) based upon a wire transfer from Freepoint to a Wertech account in Uruguay on August 10, 2018; and

- Count Seven, money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) based upon a wire transfer from Freepoint to a Wertech account in Uruguay on November 13, 2018.

Defendant elected to be tried by a jury, and jury selection was held on September 3, 2024. The jury heard evidence over the course of thirteen days, commencing on September 4, 2024, and on September 26, 2024, returned a guilty verdict as to all Counts. At the conclusion of the Government's case-in-chief, Defendant made an oral motion for a judgment of acquittal. *See* Sep. 18 Trial Tr., AM, ECF No. 355 at 57–71. The Court reserved decision, and on January 23, 2025, Defendant filed the instant motion and memorandum in support. Def.'s Mot., ECF No. 379; Def.'s Mem. in Supp., ECF No. 379-1.[3] The Government opposed on February 24, 2025, Gov. Opp'n, ECF No. 394, and the Defendant filed a reply in support of his motion on March 7, 2025. Def.'s Reply, ECF No. 395.

**Standard of Review**

### *Motion for Judgment of Acquittal*

"Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. A defendant who challenges the sufficiency of the evidence to support his conviction bears a heavy burden. Not only must the evidence be viewed in the light most favorable to the Government and all permissible inferences drawn in the

---

[3] Defendant filed two versions of the memorandum in support, one publicly available and redacted at ECF No. 379–1 and one unredacted and under seal at ECF No. 381.

Government's favor, but the jury verdict must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (cleaned up).

When evaluating the sufficiency of the evidence, courts must "bear in mind that the jury's verdict may rest entirely on circumstantial evidence." *Id*. "When making a case based on circumstantial evidence, the government need not 'exclude every reasonable hypothesis other than that of guilt.'" *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954)). Moreover, "it is the task of the jury, not the court, to choose among competing inferences." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). Rule 29 does not provide the trial court with an opportunity to "substitute its own determination of the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984); *accord United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016). Thus, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Guadagna*, 183 F.3d at 130 (citation and internal quotation marks omitted).

### *Motion for a New Trial*

Rule 33 provides that the district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "In evaluating a Rule 33 motion, the court

must 'examine the entire case, take into account all facts and circumstances, and make an objective evaluation,' keeping in mind that the 'ultimate test' for such a motion is 'whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (quoting *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013)). "In other words, there must be a real concern that an innocent person may have been convicted" for the ordering of a new trial to be appropriate. *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (cleaned up).

With these legal principles in mind, the Court turns to the merits of Defendant's motion. In doing so, the Court will discuss the evidence at trial as necessary to address the issues raised by the defendant.

## Discussion

### *The Motion for Judgment of Acquittal*

In seeking a judgment of acquittal, Defendant renews, principally, the claim he raised pretrial—that the prosecution is time-barred because the Government failed to prove that any illegal conduct occurred after August 14, 2017, the agreed upon cut-off date under the applicable statute of limitations. He also challenges the sufficiency of the evidence as to whether Defendant "entered into an unlawful agreement in the first place." Def.'s Mem. in Supp. at 1. In response, the Government asserts that Defendant is simply arguing an alternative interpretation of the evidence at trial, which, when viewed under the deferential standard discussed above, supports the jury's verdict. The Court agrees with the Government.

Stepping back, the Court reviews some of the procedural history in this matter. On October 16, 2023, Defendant filed a motion to dismiss arguing, *inter alia,* that the Superseding Indictment was, on its face, time barred. Def.'s Mot. to Dismiss, ECF No. 112. The main premise of the motion was the lack of connection between any of the events that occurred in 2018 (which fell within the

statute) and the charged conspiracy which dated back to 2010. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 114. Defendant argued that the events that occurred in 2018 could not have been "in furtherance of" either the FCPA conspiracy or the "offer, payment, promise to pay, or authorization to pay" bribes as required under the FCPA. *Id.* at 13–21. The argument was compelling, as all parties agreed that the last known bribery payment occurred in 2016. The Court agreed that the connection between the bribery scheme and the events in 2018 was "not obvious," but ultimately concluded that these were questions for the jury and part of the Government's burden of proof. *United States v. Oztemel*, No. 3:23-CR-00026 (KAD), 2024 WL 3274721, at *6 (D. Conn. July 2, 2024). The Superseding Indictment, which tracked the statutory language, was not time barred on its face. In the instant motion, Defendant argues that the Government did not meet its burden.

The Court disagrees. Rodrigo Berkowitz ("Berkowitz") filled this evidentiary gap.[4] He testified that his activities in exchange for bribes continued until December 5, 2018, the date the Brazilian investigation became public and the day on which the Federal Bureau of Investigation knocked on his door for the first time. Sep. 6 Trial Tr., PM, ECF No. 342, at 24–26. He further testified that he was still owed bribe money under the scheme, *id.* at 29–30, and that, although he was promised bribes for which he did not actually receive the money, Sep. 9 Trial Tr., AM, ECF No. 343, at 88, he still expected to be paid "because I had an agreement between Eduardo Innecco and Glenn to receive those bribes." *Id.* The jury also heard testimony about the sharing of confidential Petrobras information in connection with trading in July 2018, which was described

---

[4] Given the facially compelling nature of the Defendant's motion to dismiss; the Government's (unfortunate) refusal to offer its factual theory of the connection between the events of 2018 and the bribery conspiracy or FCPA violations, and the Court's expectation that the argument would be renewed in a Rule 29 motion, the Court was, frankly, on the lookout for the factual link between the charged 2018 conduct and the conspiracy or any "offer, payment, promise to pay or authorization to pay" as required under the FCPA. As discussed above, Berkowitz provided this evidence in his testimony.

6

as part and parcel of the bribery scheme. Sep. 6 Trial Tr., PM, at 51–61. Berkowitz testified that he provided information on an oil trade deal, as was reflected in Government Exhibit 9007, in August 2018 in exchange for bribes. Sep. 9 Trial Tr., AM, at 67–68. By way of further example, Berkowitz testified about a "fake negotiation" in 2018 in which Freepoint won the trade for which he expected approximately $50,000.00 in bribe monies. Sep. 9 Trial Tr., PM, ECF No. 344, at 14–15. These are merely examples of Berkowitz's testimony implicating Defendant in the time period that followed August 14, 2017. In combination, the jury could have concluded, crediting Berkowitz' testimony, that the events which undergird the substantive counts and the overt acts within the limitations period, were "in furtherance of" the FCPA and money laundering conspiracies as well as the unlawful "offer, payment, promise to pay or authorization to pay" bribes, even if the promised payment never materialized.

Similarly, Berkowitz' testimony, if credited, established Defendant's knowing participation in the bribery and money laundering scheme. He testified that he and Defendant discussed the bribes on three occasions—once in Miami when the deal was struck; once in London and once in Rio de Janeiro. Sep. 9 Trial Tr., AM, at 29–34; 58–60, 91–92. While Defendant cites to evidence that undermines this conclusion, *see* Def.'s Mem. in Supp. at 18, these arguments were advanced at trial and rejected by the jury. Further, Berkowitz was thoroughly cross-examined for over three hours. He acknowledged his own criminal and tawdry conduct. *See, e.g.,* Sep. 10 Trial Tr., AM, ECF No. 345, at 11–17. He admitted to making false statements to Brazilian authorities and acknowledged the potential benefits available to him under his cooperation agreement. *Id.* at 11, 44–50, 81–83. Indeed, Defendant argued that Berkowitz's testimony, particularly as it related to Defendant's involvement in the bribery scheme, was wholly inadequate for the jury to find

Defendant's knowing participation in the scheme beyond a reasonable doubt. *See* Sep. 25 Trial Tr., ECF No. 364, at 52–60.

While Berkowitz's testimony as to Defendant's involvement was important to the Government's case, it did not stand alone. The Government offered corroborating emails, messages, records and other documents which support the strong inference that Defendant was a knowing participant in the scheme. Berkowitz's numerous documented communications with Innecco, by encrypted messaging or otherwise, reveal a back channel of communication from Berkowitz to Defendant. *See, e.g.,* Sep. 9 Trial Tr., AM, at 95–98; Gov. Ex. ("GX") 4004-T-C. Communications between Innecco and Defendant, which included the use of multiple aliases; code words, the use of private emails for certain communications, and an acknowledgement that less should be written in emails, further supports the inference of Defendant's knowing participation. *See, e.g.,* GX 5049 (email from Innecco, using an address that the jury could have found to be an alias, sending information to Defendant's personal email address);[5] GX 5276 (email from a different Innecco alias to Defendant referring to "breakfast," a term which the jury could have found to be a code word for "bribes");[6] GX 5793 (email in which Defendant writes, to Innecco "We can talk in the morning. U write too much," and in which the subject line refers to "breakfast"). The Court does not further detail these records except to observe that Defendant's utter dismissal of this evidence is not warranted on this record.[7] The Court cannot substitute its

---

[5] The email came from the address "saanenrio@yahoo.com. The Government provided evidence that this address was linked to Innecco, and that Defendant knew that emails from it were from Innecco. *See* Sep. 5 Trial Tr., PM, ECF No. 340 at 45–48.

[6] Berkowitz testified that "breakfast" was a code word Innecco and other intermediaries used for "bribes." Sep. 6 Trial Tr., PM, at 64. The Government also introduced evidence that the email address skazisnaf@yahoo.ca was associated with Eduardo Innecco.

[7] Some of the most inculpatory evidence surrounded Innecco's use of multiple aliases and email accounts when communicating with Defendant. Defendant dismisses this evidence as typical of "Edweirdo." Def.'s Mem. in Supp. at 18–19. He ignores the competing inferences to be drawn from Defendant's emails in which he makes references to putting too much information in the email, i.e. "you write too much," or Defendant's emails which, it might be inferred,

own credibility assessment for that of the jury. *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011). On this record, the Court cannot conclude that no reasonable juror could have found Defendant guilty beyond a reasonable doubt.

The motion for judgment of acquittal is DENIED.

## Motion for a New Trial

Alternatively, Defendant seeks a new trial citing several errors by the Court which rendered the trial fundamentally unfair.

### *The Jury Instructions*

Defendant argues that the jury instructions were incorrect, overly confusing and otherwise inadequate. The Government responds that the jury instructions were legally correct and, even if some aspects of the charge were not correct, Defendant failed to object, and any purported error was harmless and does not warrant a new trial.

### Counts Two, Three and Four – Substantive FCPA violations

Each substantive FCPA count charged Defendant with violating 15 U.S.C. § 78dd-2(a)(1) and (a)(3).[8] The Court instructed the jury as follows:

The portion of the FCPA at issue provides in relevant part:

> It shall be unlawful for any domestic concern . . . or for any officer, director, employee, or agent of such domestic concern…, to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value—

---

are intentional efforts to falsely distance himself from the scheme. *See*, e.g., GX 5793, 5393. It was for the jury to weigh the competing inferences from the body of evidence and not now, for this Court, to undo their determination.

[8] By simply tracking the statutory language, the Government also charged a violation of § 78dd-2(a)(2) but conceded prior to trial that there was no evidence to support such a charge and so there was no reference to that portion of the statute in the jury instructions. May 20 Hearing Tr., ECF No. 174, at 11–12.

(1) to any foreign official for purposes of—

    (A)

        (i)    influencing any act or decision of such foreign official in his official capacity,

        (ii)    inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or

        (iii)    securing any improper advantage; or

    (B)    inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person;… or

(3) to any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official…for purposes of—

    (A)

        (i)    influencing any act or decision of such foreign official in his official capacity,

        (ii)    inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or

        (iii)    securing any improper advantage; or

    (B)    inducing such foreign official to use his influence with a foreign government or instrumentality

> thereof to affect or influence any act or decision of
> such government or instrumentality,

> in order to assist such domestic concern in obtaining or
> retaining business for or with, or directing business to, any
> person.

Jury Instructions, ECF No. 306, at 12–14; Sep. 24 Trial Tr., ECF No. 363, at 20–21

Thus, the jury was instructed that it could find Defendant guilty if it determined that he violated either subsection (a)(1) or (a)(3) of the FCPA. However, Defendant argues that the Government was required to elect under which subsection, (a)(1) or (a)(3), it claimed the Defendant violated the FCPA. Def.'s Mem. in Supp. at 22–27. Alternatively, Defendant argues that the jury instruction was overly confusing, even if legally correct.

The FCPA provides multiple methods by which it can be violated. To obtain a conviction under these subsections of the statute, the government must prove that the defendant is (1) a domestic concern or employee or agent thereof; (2) that made use of a means or instrumentality of interstate commerce; (3) corruptly; (4) in furtherance of an offer, payment or promise to pay anything of value; (5) to any foreign official, or alternatively, to any person knowing that the money would be offered, promised or given, directly or indirectly to a foreign official;[9] (6) for one of the four purposes delineated. *See e.g., Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber,* 327 F.3d 173, 179–80 (2d Cir. 2003) (identifying elements of § 78dd-2(a)(3)). The fifth element varies and depends upon whether the offer, promise or payment is made to a foreign official, or whether the offer promise or payment is made to a "person" knowing that the person would then in turn pay a foreign official.

---

[9] Whether Subsection (a)(1) and (a)(3) are essentially distinct offenses under the FCPA is discussed *infra.*

The sixth element may also vary depending upon the purpose for which the offer, promise or payment is allegedly made.

Defendant argues that Innecco cannot simultaneously be both an "agent of a domestic concern" as well as a "person" as contemplated under Subsection (a)(3). Thus, he posits, the Government must decide which role Innecco played and choose between subsection (a)(1) and (a)(3). Def.'s Mem. in Supp. at 23. The court rejected this argument when drafting the jury instructions and sees no basis to reach a different conclusion at this juncture.[10] Under the FCPA, "person" is defined to include "a natural person, company, government, or political subdivision, agency or instrumentality of a government." 15 U.S.C. § 78c(a)(9). Innecco, a natural person, falls squarely within this definition even if he was also, at various times, acting as an agent of Freepoint or Defendant. Although the Court agreed, and the Government does not argue otherwise, that Innecco could not be both the "domestic concern" and the "person" at the same time, for purposes of Subsection (a)(3), i.e. making an offer/promise/payment to himself, the evidence easily supported violations under Subsection (a)(3) outside this limited construct, i.e. when Defendant directed Freepoint to pay Innecco's commission, knowing that a portion of those funds would be provided to Berkowitz as a bribe. *See, e.g.,* GX 103–A; Sep. 13 Trial Tr., ECF No. 351, at 69–70.

And the jury was instructed that the fifth element of the FCPA violation included that: "the offer, payment, promise to pay, or authorization of the payment of money or a gift or anything of value was ***either***: (a) to a foreign official; or (b) to any other person or entity while the individual knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official." Jury Instructions at 13–14 (emphasis added); Sep. 24 Trial Tr., PM, at 22. The Court also charged the jury on aiding and abetting liability as well as

---

[10] The Court also agrees with the Government that such a reading could, under certain circumstances, run contrary to Congress's intent in passing the FCPA or otherwise result in inequitable enforcement under the statute.

conspiracy/*Pinkerton* liability. Jury Instructions at 18–22; Sep. 24 Trial Tr., PM, at 29–35. While the Court agrees that the case, the evidence, and the instructions were complex, and even complicated, the Court cannot conclude that the jury was unable to apply the various legal principles to the record evidence. *See United States v. Stewart*, 433 F.3d 273, 310 (2d Cir. 2006) (noting that courts presume jurors follow their instructions unless the record suggests that they were confused or prejudiced in determining the counts of conviction); *United States v. Saipov*, No. S1 17-CR-722 (VSB), 2023 WL 371531, at *7 (S.D.N.Y. Jan. 24, 2023) ("Jurors are asked to parse through complex concepts all the time in cases brought in federal court, and there is no reason to believe that jurors would be incapable of following [the Court's] instructions."). The mere fact that a case offers complex legal theories or multiple alternative bases for finding liability is not a basis upon which to conclude the jury was unable to properly assess the evidence and render a verdict. And as discussed above, the evidence was sufficient to support the jury's verdict.

### Section 78dd-2(a)(1)

At the beginning of the Court's instruction on the substantive FCPA counts, the Court cited to Section 78dd-2(a)(1) but did not cite to (a)(3).[11] Jury Instructions at 11–12; Sep. 24 Trial Tr. at 20. This was an oversight and to the extent it suggested that charges were pursued only under Subsection (a)(1), it was error. But it was one of *de minimis* impact, if any, Defendant's argument to the contrary notwithstanding. Immediately following this single sentence, the Court instructed the jury on the *statutory language as well as the elements* of the FCPA violation—both of which included the Subsection (a)(3) language and theory of liability. The jury was not therefore cabined to consideration of Subsection (a)(1) as a result of the Court's single reference to Subsection (a)(1).

---

[11] Defendant failed to object to this oversight at trial, and it goes without saying that had the oversight been brought to the Court's attention, it would have been corrected.

When viewed as a whole, the question of Defendant's liability under Subsection (a)(3) was properly presented to the jury.[12] *See Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.")

**"Domestic Concern"**

At trial, the parties stipulated that Glenn Oztemel was a "domestic concern" and was an "employee and agent" of a domestic concern. GX 10012. He now challenges the Court's instruction that the jury can find this element of the FCPA violation as having been satisfied based upon the stipulation. Def.'s Mem. in Supp. at 25. First, Defendant posed no objection to the Court's instruction in this regard nor advanced any argument that the charge injected confusion with respect to the alternative theories of liability, i.e. aiding and abetting.

Moreover, this instruction was provided in the context of principal liability under the FCPA and was legally correct (presumably why no objection was offered). The jury was instructed separately regarding aiding and abetting liability. Defendant offers only conjecture that the charge regarding principal liability under the FCPA somehow rendered the aiding and abetting charge incorrect or otherwise too unwieldy for the jury to follow.

Defendant suggests that for the jury to find him guilty on the substantive counts under subsection (a)(1), as an aider or abettor, it would have been required to "find beyond a reasonable doubt that Innecco himself was an agent of a domestic concern," when the Court had not defined "agent of a domestic concern," and had informed the jury that it could consider that element "satisfied" by the parties stipulation as to Defendant. Def.'s Mem. in Supp. at 25.[13] However, as

---

[12] The jury charge, which the jury had a copy of during deliberations, was 56 pages in length and took two hours to read.

[13] This argument also ignores that the jury could have found Defendant guilty under Subsection (a)(1) as a principal, rendering any concern regarding the aiding and abetting charge irrelevant. Berkowitz testified that Defendant agreed

the Government accurately notes in its opposition, evidence and witnesses introduced by both parties overwhelmingly described Innecco as Defendant's "agent." Gov. Opp'n at 35, n. 22. Indeed, Defendant's memorandum in support of the instant motion refers to Innecco as Freepoint's agent. Def.'s Mem. in Supp. at 10 ("And the opportunities that agents like Innecco found were valuable only if other trading firms didn't know about them…").[14]

A purported error such as this, which had the potential to "mislead the jury into believing that it need not make an independent finding" as to Innecco's status as an agent of a domestic concern for the purposes of Defendant's aiding and abetting liability, is subject to harmless error analysis. *United States v. Gomez*, 580 F.3d 94, 100 (2d Cir. 2009). Upon a review, a court considers "the weight of trial evidence bearing on the omitted element; and if such evidence is overwhelming and *essentially uncontroverted*, there is no basis for concluding that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 100–101 (emphasis added, quoting *United States v. Guevara*, 298 F.3d 124, 126–27 (2d Cir.2002)). Here, Innecco's agent status was not only uncontroverted; Defendant's reliance on Innecco's status as a reliable and vetted, if somewhat strangely behaved agent was an element of his defense and is raised in the instant motion. *See* Def.'s Mem. in Supp. at 10–11. The Court may therefore safely conclude that

---

to pay him bribes when the deal was struck in Miami, regardless of whether subsequent payments were funneled through Innecco as a "person" under Subsection (a)(3) or an "agent of a domestic concern" under Subsection (a)(1). See *United States v. Boone*, 120 F. App'x 868, 870 (2d Cir. 2005) ("When a case is tried under two alternative theories of guilt, the conviction is affirmed so long as the evidence was sufficient to sustain a conviction under either one of those theories…Because the evidence was sufficient to convict Boone as a principal, the inclusion of the aiding and abetting charge was not erroneous."); *United States v. Sebbern*, 641 F. App'x 18, 21 (2d Cir. 2015) (holding that, in a case where the defendant challenged the district court's aiding and abetting instructions, the appellate court "need not reach the aiding-and-abetting issue, because there was sufficient evidence to convict defendants as principals."); *United States v. Pettway*, No. 20-63, 2021 WL 4188716, at *2 (2d Cir. Sept. 15, 2021)("The District Court properly rejected [defendant's] argument that the evidence was insufficient to support his convictions for 'aiding and abetting' … on the ground that 'there was sufficient evidence to permit the jury to find that [defendant] was criminally liable for the substantive offenses charged in counts 7-9 as a principal.'").

[14] Defendant's argument has no bearing on his conviction if it is based on Subsection (a)(3), in which Innecco might have been found to be the "person" to whom moneys were paid with knowledge that such moneys would reach a foreign official.

had an agency instruction been included, the jury would have returned the same verdict beyond a reasonable doubt. *Gomez*, 580 F.3d 94 at 102.

### Unanimity

Defendant next argues that the Court should have instructed the jury that it had to be unanimous as to whether Defendant violated either Subsection (a)(1) or (a)(3).[15] Again, Defendant neither requested such a charge nor objected to its absence. The Court therefore reviews the jury instruction in this regard for plain error. *See United States v. Reid*, 300 F. App'x 50, 53 (2d Cir. 2008) (failure to request); *United States v. Gilliam*, 582 F. App'x 22, 24 (2d Cir. 2014) (failure to object)*.* The Court will find error only if the error is clear or obvious, rather than subject to reasonable dispute, and if it affected substantial rights. *United States v. Washington*, No. 21-CR-603 (VEC), 2024 WL 4457707, at *2 (S.D.N.Y. Oct. 10, 2024) (citing *United States v. Wernick*, 691 F.3d 108, 113 (2d Cir. 2012). Plain error must also "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Grote*, 961 F.3d 105, 115–16 (2d Cir. 2020).

As discussed above, the FCPA identifies multiple methods by which the statute may be violated, depending on to whom a promise or payment is made; the intent or knowledge with which such a promise or payment is made; the purpose of the promise or payment; etc. Defendant posits that alternative theories of liability (depending on the many variables) are separate crimes and therefore require a unanimity instruction. He cites no authority for this proposition and the Court has found none. Absent same, any error, cannot be said to be "plain." *See United States v. Simmons*, No. 23-6771, 2025 WL 615459, at *2 (2d Cir. 2025)

---

[15] This argument is an adjunct to the argument that under the circumstances of this case, the Government was required to elect which subsection, (a)(1) or (a)(3), was allegedly violated.

"A jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element of the offense. However, it need not always decide unanimously which of several possible means the defendant used to commit an element." *Richardson v. United States*, 526 U.S. 813 (1999). Elements, as opposed to "means" or "brute facts," are "ordinarily listed in the statute that defines the crime." *Id.*; *see also United States v. O'Brien*, 560 U.S. 218, 225 (2010) ("[W]hether a given fact is an element of the crime ... is a question for Congress.").

> For example, in *Mathis v. United States*, —— U.S. ——, … (2016), the Supreme Court discussed a hypothetical statute that "requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify." The Court explained that because only the use of a deadly weapon is an *element*—and the illustrative list "merely specifies diverse means of satisfying [that] element"—a "jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a 'deadly weapon.'"

*United States v. Requena,* 980 F.3d 30, 49 (2d Cir. 2020)

The question then is whether violations of (a)(1) and (a)(3) have distinct elements or whether each is simply a different means of violating the FCPA. Although neither the Supreme Court nor circuit courts have spoken to the FCPA on this issue, the cases that have analyzed statutes that include various means by which they might be violated generally do not require unanimity with respect to those means. *See, e.g., Requena,* 980 F.3d 30 (while jury must unanimously agree that a defendant charged with a violation of Section 841(a)(1) manufactured, distributed or possessed with intent to distribute controlled substances, it need not unanimously agree as to the precise nature of the controlled substance analog allegedly so possessed, manufactured or distributed.); *United States v. Rivera*, No. 3:20-CR-00168 (JCH), 2023 WL 6442803, at *3 (D. Conn. Oct. 3, 2023) (in a prosecution under 18 U.S.C. § 922(g), the jury need not be unanimous

as to which firearm or ammunition the defendant allegedly possessed.); *United States v. Applins*, 637 F.3d 59, 80 (2d Cir. 2011) (in RICO conspiracy case, jury was not required to reach unanimity with respect to which racketeering acts were the object of the conspiracy); *United States v. Aguilar*, 742 F. Supp. 3d 322, 345 (E.D.N.Y. 2024) (jury need not be unanimous as to which specified unlawful activity undergirds a money laundering conspiracy); *United States v. Kozeny*, 667 F.3d 122, 132 (2d Cir. 2011) (in conspiracy to violate the FCPA, jury was not required to be unanimous as to overt acts committed in furtherance of the conspiracy.) *United States v. McIntosh*, 753 F.3d 388, 392–93 (2d Cir. 2014) (in prosecution under 18 U.S.C. § 111(a), jury did not need to unanimously agree as to whether defendant assaulted, resisted, opposed, impeded, intimidated or interfered with a federal officer as each was only a means of violating the statute.); *United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006) (unanimity not required in prosecution under 18 U.S.C. § 1001 as to the nature or specifics of the alleged false statement.)

The important question to be answered is whether the individual means of committing the crime "are so disparate as to exemplify two inherently separate offenses." *Schad v. Arizona*, 501 U.S. 624, 643–45 (1991) (Arizona first degree murder statute that included both premeditated murder and felony murder did not require unanimity as to which means for committing first degree murder had been proven.).

The thrust of an FCPA violation is the offer, promise, authorization and payment of bribes to a foreign official, whether directly or indirectly. The statute identifies different types of people through whom such offers, payments and/or promises might be delivered as well as multiple purposes for which such offers, promises or payments might be arranged. The Court concludes that these variations constitute the "brute facts" or means for violating the FCPA, as opposed to identifying different elements of an FCPA violation. If the distinction between felony murder and

premeditated murder are not sufficiently disparate, *Schad,* 501 U.S. at 643–45, to require unanimity, the significantly more nuanced distinctions between the various subsections of § 78dd-2(a) would likely be classified as "means" rather than separate elements.

### Conscious Avoidance

Defendant argues that the Court's conscious avoidance charge diluted the Government's burden of proof because it was incorrectly given in the context of the FCPA conspiracy count. Def.'s Mem. in Supp. at 27–29. As given, this appears to be correct insofar as it was discussed in the context of whether Defendant "knowingly" joined the FCPA conspiracy. *See United States v. Khalupsky*, 5 F.4th 279, 297 (2d Cir. 2021). Defendant distinguishes *Khalupsky*, where the court found no error in the conscious avoidance charge, in part by highlighting that the charge therein was "included only as part of a general definition of knowledge in a standalone knowledge section of the instructions," rather than "as part of the conspiracy charge itself." Def.'s Mem. in Supp. at 28. However, within the conspiracy charge is precisely where Defendant requested the Court to instruct on conscious avoidance:

> THE COURT: Both parties had the "conscious avoidance" Charge as a, I think, preliminary to the substantive counts. But both parties had conscious avoidance offered only in the context of the conspiracy counts.
> The -- and I assume, and it wasn't crystal clear to me, that the conspiracy counts each require –
>
> MR. BOXER: Knowingly.
>
> THE COURT: -- joining the conspiracy knowing of the objects in the conspiracy. And, so, once you inject knowing, then you get to conscious avoidance.
>
> MR. BOXER: Precisely.
>
> THE COURT: Okay. But I think that -- but the substantive -- and I could just be wrong on this – the substantive FCPA counts also require, at least in the alternative theory, that the promise was made to a person knowing that

-- and, so, knowing gets injected into the FCPA also under that section. And doesn't conscious avoidance apply to that, also?

MR. BOXER: It would. But as the Court has found -- has I think held, Mr. Innecco's the agent. So, they're proceeding under (a)(1), where there is not a knowing element.

THE COURT: Okay.

MR. BOXER: If it's under (a)(3), I appreciate what Your Honor said. And it doesn't appear in the money laundering substantive count, so it's our view that it's only pertinent for the two conspiracy counts.

…

MR. BOXER: Your Honor, just to make sure I'm following on the conscious avoidance, and our table is following. Is it still connected to the concept of knowingly? Is that still the way the charge is going to read?

THE COURT: The way the charge reads right now, it is connected to "knowing," but only in the context of the conspiracy counts. And I think what I've just heard from the Government is that they are not going to seek a conscious avoidance with respect to any knowing requirement of the FCPA.

…

MR. BOXER: And then, logistically, it'll go with the conspiracy count? Is that –

THE COURT: I personally think it should be moved, maybe to the first conspiracy charge. And then, later, when I get to the second conspiracy charge, refer back to it. But that -- I don't think either -- well, you might not have put it in at all, I can't remember. But in what was proposed, it preceded the substantive charges. And as I was reading it, I wasn't sure that made the most sense.

MR. BOXER: Yeah, I think that's right. I guess I reserve the right to change my mind, but for now I -- that's fine.

THE COURT: Okay. Any concern about moving "conscious avoidance" to the first conspiracy charge?

MR. ROBELL: No, Your Honor.

THE COURT: Okay. Then that's what I'll do.

MR. BOXER: Thank you, Your Honor.

Sep. 19 Charge Conf. Tr., ECF No. 359, at 7–8; 18–19.

THE COURT: Page 28 [of the jury instructions]. "Second Element: Membership in the Conspiracy." This is the section in which the "knowingly" -- where the defendant is alleged to have acted "knowingly," and it was within this section that I was going to insert the "conscious avoidance" that we talked about earlier inserting into the conspiracy count. Any concern about what's there or what will be there once I insert "conscious avoidance"?

MR. ROBELL: No.

MR. BOXER: No concern about inserting it there. I think that's where it first really comes up.

Sep. 23 Charge Conf. Tr., ECF No. 362, at 4–5.

A defendant cannot now seek a new trial on the theory that the instruction to which he purposefully and unequivocally offered no objection, merits same. This amounts to the proverbial primrose path. *See United States v. Giovanelli,* 464 F.3d 346, 351 (2d Cir. 2006) ("Under Rule 30(d) of the Federal Rules of Criminal Procedure, a party who has an objection to the charge given by the trial court must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. … Further, if a party invited the charge or *affirmatively waived his position*, [he] has waived any right to appellate review of the charge." (citations omitted, emphasis added)). The Court concludes that Defendant "affirmatively waived" the argument he now advances. *Id; see also United States v. Crowley,* 318 F.3d 401, 412–15 (2d Cir. 2003). Indeed, at trial, when Defendant objected to the charge after it had already been delivered, the Court made clear that the conscious avoidance charge was inserted into the conspiracy count because that was what the *defense asked the Court to do.* Sep. 24 Trial Tr. at 86–87. Further, other than noting his

objection, the Defendant did not seek a correction to the jury instruction before the jury began its deliberations.

Even if this argument was not waived, the conspiracy charge and the Court's instructions on "knowingly" were not, when read in their entirety, misleading such that a new trial is warranted. Like in *Khalupsky*, the Court instructed the jury that in order to be convicted of the conspiracy charge, the jury must find that he "knowingly and willfully joined the conspiracy," and defined a "willful" act as something "done voluntarily and intentionally and with the specific intent to do something which the law forbids[.]" Jury Instructions at 10, 25; Sep. 24 Trial Tr. at 17–18, 38. The Court in *Khalupsky* determined that such instructions "made clear that proof of membership in the conspiracy required a showing of actual knowledge." 5 F.4th at 297.

Finally, any error in this regard was harmless. As discussed above, the evidence of Defendant's knowing participation in the FCPA bribery conspiracy was extensive. Berkowitz, the bribe recipient, testified unequivocally that Defendant was a knowing member of the conspiracy and was fully aware of the bribery scheme involving himself, Innecco and others. *See, e.g.,* Sep. 9 Trial Tr., AM, at 41–43. This testimony was corroborated through multiple emails; text messages; trade records; WhatsApp messages; travel records; corporate records and other documentary proof. Further, the Government did not argue or rely upon a conscious avoidance theory in arguing that Defendant knowingly joined the FCPA conspiracy, or for that matter, as it relates to any other count in the indictment. Accordingly, any error in the FCPA conspiracy count relating to the inclusion of a conscious avoidance charge was harmless. *See United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000) ("[A]n erroneously given conscious avoidance instruction constitutes harmless error if the jury was charged on actual knowledge and there was 'overwhelming

evidence' to support a finding that the defendant instead possessed actual knowledge of the fact at issue.").

### Statute of Limitations

Defendant next challenges the jury instructions on the statute of limitations and asserts that the instruction permitted a conviction for conduct that was otherwise time-barred. Again, Defendant challenges the charge on this issue, *for the first time,* in his Rule 33 motion. He did not object to the Court's statute of limitations charge at trial, nor the court's use of a boilerplate "date of commission" instruction. Defendant's argument is misplaced, especially when viewed through the lens of "plain error" review. He argues that the boilerplate "date of commission" instruction undermined the statute of limitations defense, notwithstanding the Court's explicit instruction that "there is a limit on how much time the government has to obtain an indictment. For you to find the defendant guilty of conspiracy, the government must prove beyond a reasonable doubt that at least one act in furtherance of the conspiracy was committed after August 14, 2017." Jury Instructions at 31–32; Sep. 24 Trial Tr. at 47–48.

And it was not error, let alone plain error, for the Court to include conduct and "overt acts" that pre-dated August 14, 2017. *United States v. Frank*, 156 F.3d 332, 339 (2d Cir. 1998) (holding that, in a case where the indictment charged at least two timely overt acts, defendants were not prejudiced by instructions that "both (1) [jury] had to find that a timely overt act was committed and (2) that the timely overt act had to be either listed in the indictment or substantially the same as an act listed in the indictment"); *United States v. Rakow*, No. CR 04-01563 MMM, 2007 WL 9751572, at *5, n.6 (C.D. Cal. Jan. 12, 2007) (finding no error where the jury was provided the indictment, which recited 22 overt acts from inside and outside the limitations period, where the court instructed the jury that they must find that defendant committed at least one overt act within

the limitations period). Finally, as with Defendant's other claims of error, any error regarding the statute of limitations charge, or lack thereof with respect to the money laundering conspiracy, was harmless. The jury convicted Defendant on three substantive FCPA counts and two substantive money laundering counts, each of which was predicated on acts that occurred after August 14, 2017. It is beyond conjecture to conclude that the jury might have convicted on the conspiracy counts for time barred conduct while simultaneously convicting on non-time-barred conduct with respect to the substantive counts. *United States v. Quan*, No. CR 04-0323 WBS, 2008 WL 11441898, at *1 (N.D. Cal. Jan. 25, 2008) ("[T]he error could not have affected the outcome of the trial because the other the substantive counts upon which the jury found defendants guilty required a finding that some of the charged overt acts were performed within the statute of limitations.")

### *Opening Statements*

"Opening statements function merely to 'state what evidence will be presented,' rather than as 'an occasion for argument.'" *United States v. Donald*, No. 3:21-CR-8 (VAB), 2023 WL 6958797, at *29 (D. Conn. Oct. 20, 2023) (quoting *U.S. v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring)). The constitution does not guarantee a criminal defendant the right to an opening statement, and therefore "the making and timing of opening statements" is left to the discretion of the trial judge. *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983); *see also* D. Conn. L. Civ. R. 57.2. If it allows them, the Court's "very broad" discretion extends to the contents of the parties' opening statements. *United States v. Epps*, No. 11-CR-309-A, 2016 WL 2907540, at *4 (W.D.N.Y. May 19, 2016), *aff'd*, 742 F. App'x 544 (2d Cir. 2018). In exercising that discretion, the court "must be guided by the purpose of a trial: to permit a defendant a fair opportunity to present his case." *United States v. Evans*, 629 F. Supp. 1544, 1546 (D. Conn. 1986).

Defendant complains that he was prejudiced by the Court's ruling regarding opening statements. Defendant offers no authority for the proposition that the Court's ruling violated his due process rights. Nor upon review does the Court conclude that the ruling gave unfair advantage to the Government or hindered Defendant's ability to present his case. The opening statements of both parties properly and fairly oriented the jury to the trial they were soon to embark upon and, "viewed against the entire argument before the jury," certainly did not deprive Defendant of a fair trial. *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir. 1985) (citation and internal quotations omitted).

### The purported **Giglio** *violation*

Lastly, Defendant asks this Court to revisit the claim he raised at trial that the Government withheld prior exculpatory statements made by Berkowitz—specifically that he, Defendant and Innecco met in Rio de Janeiro and at that meeting discussed the bribery scheme. Defendant argues that the FBI 302 referencing this meeting does not contain any indication that bribes were discussed. Thus, Defendant posits, his failure to tell the FBI about the bribery discussion is exculpatory to the extent it aids Defendant in cross-examination. At trial, the Court rejected this argument. The Court first observed that the testimony about the bribery discussion was inculpatory, and even if useful to support the Defendant's theory that Berkowitz's story changed over time, Defendant was able to explore the timing of this disclosure on cross-examination, and/or by calling Special Agent Lundby on the issue. Sep. 13 Trial Tr., AM, ECF No. 351, at 7–8.[16] The Court does not herein revisit its decision that no *Giglio* (or Jencks Act) violation occurred and for the same reasons the Court denied the motion for mistrial, *see id.*, it denies the motion for a new trial.

---

[16] Defendant thoroughly cross-examined Berkowitz on the issue of whether he had, in fact, disclosed the alleged bribery discussion to the FBI prior to trial. *See* Sep. 10 Trial Tr., AM, at 77–80.

**Conclusion**

The Motions for Judgment of Acquittal or in the Alternative for a New Trial are DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of August, 2025.

 _/s/ Kari A. Dooley_
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE